(No. 72357.—

CARLOS MAPLE *et al.*, Appellees, v. MERVIN E. GUSTAFSON, Appellant.

*Opinion filed September 24, 1992.—Rehearing denied November 30, 1992.*

446

Martin K. Morrissey, of Reed, Armstrong, Gormay, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellant.

Michael R. Bilbrey and Pamela J. Wise, of Bono, Goldenberg, Hopkins & Bilbrey, P.C., of Wood River, for appellees.

JUSTICE MORAN delivered the opinion of the court:

Carlos and Mary Maple (plaintiffs) filed suit against Mervin E. Gustafson (defendant) in Madison County to recover damages caused by the alleged negligence of the defendant in operating his vehicle. At trial, the court found the evidence of defendant's negligence so persuasive that it removed any question of negligence from the jury and instructed it only on the issues of proximate cause, damages, and contributory negligence. After deliberating, the jury returned a general verdict for the defendant; consequently, we do not know on what basis it found for defendant. Plaintiffs then filed a post-trial motion for judgment notwithstanding the verdict (judgment *n.o.v.*) or, in the alternative, a new trial. The court denied this motion in full.

Plaintiffs appealed the denial of their post-trial motion, arguing that because the verdict was against the manifest weight of the evidence, they should be entitled to a new trial. The appellate court reversed, finding for the plaintiffs, and remanded the cause to the trial court solely to determine the *amount* of damages to be awarded. (214 Ill. App. 3d 1065.) Subsequently, this

court granted defendant's petition for leave to appeal (134 Ill. 2d R. 315).

The issue before this court is whether the appellate court properly reversed the trial court, by finding for the plaintiffs notwithstanding the jury's verdict for the defendant.

This case involves an automobile accident that occurred in Granite City, Illinois, on October 8, 1986. Plaintiffs were traveling in their vehicle at approximately 35 miles per hour when defendant's vehicle, traveling perpendicular to plaintiffs', pulled out from a cross street and stopped directly in front of them. Carlos tried to avoid colliding with defendant by braking, but his automobile failed to stop in time. Plaintiffs allegedly sustained $400 damage to the front bumper and grill of their car, while defendant's car sustained approximately $800 to $900 worth of damage.

Neither of the plaintiffs struck the interior of their car on impact. Consequently, they did not sustain any cuts, bumps, bruises or abrasions. Additionally, neither plaintiff complained of any injury at the scene; however, they claimed that pain developed within one week after the accident, at which point they sought treatment from a chiropractor, Dr. Charles King, Jr. Plaintiffs were made aware of Dr. King's practice by virtue of a flyer they had received in the mail. After Dr. King treated Carlos, he referred him to Dr. Maurice Miller, who examined him and reviewed his computerized tomography (CT) scans taken at Wood River Township Hospital. Apparently, Mary was not referred to Dr. Miller. He indicated that the CT scans revealed a bulging disc in Carlos' spinal column. While there was some conflicting testimony between Dr. Miller and Dr. King, both of them testified that they believed the October 8 accident caused the conditions they had found in their examinations of plaintiffs. Upon request of defense counsel, on August

31, 1987, Dr. Raymond O. Frederick, a general surgeon, examined the plaintiffs. He opined that the October 8 accident did not cause the symptoms complained of by Carlos and Mary. However, the plaintiffs claim that Dr. Frederick testified to the effect that minor injuries occurred to Mary as a result of the accident.

Plaintiffs initially contend that they had requested the trial judge to enter a directed verdict in their favor, and to only have the jury compute the *amount* of damages sustained by the plaintiffs. A review of an in-chambers conference held after the introduction of all the evidence, on June 14, 1989, appears to indicate that the judge did in fact agree with plaintiff's counsel, that proximate cause and the *existence* of damages had been removed as issues, as demonstrated by the following excerpt from that conference:

> "THE COURT: *** There will be one verdict form that they [the jury] find for her [Mary Maple] and against Gustafson. It is up to them to determine the amount of damages. The question as to her is the amount of damages. The question as to Carlos is—Well, they will have to determine the amount of damages, but they would have to determine the applicable degree of culpability or negligence on the part of each side."

Nevertheless, subsequent to this conference, the court clearly instructed the jury, pursuant to instructions submitted by the *plaintiffs*, that the court had only found defendant to be negligent as a matter of law (*i.e.*, that there existed a duty and a breach by defendant) and that the jury was to determine whether the plaintiffs had proven damages and proximate cause. Consequently, regardless of the implication created by the in-chambers discussion, by virtue of the jury instructions given, we conclude that the elements of proximate cause and damages had not yet been determined at that point.

Defendant maintains that when the appellate court reversed the trial court's decision and remanded it for a new trial only on the *amount* of damages, it effectively entered a judgment *n.o.v.* (that is because to send the cause back as it did, the appellate court would have had to find that the plaintiffs proved all of the elements of a *prima facie* case, including duty, breach, proximate cause, and the *existence* of damages, whereas the trial court did not so conclude). Defendant alleges that since the appellate court entered its own judgment on the proximate cause and damage issues, leaving only the *amount* of damages for subsequent jury consideration, the court erred since it did not apply the *Pedrick* standard, which must be satisfied before a judgment *n.o.v.* can be entered. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.) Instead, defendant claims, the appellate court erroneously applied a lesser standard which is used for determining the right to a *new trial*.

An initial step in analyzing the issue before us is to determine the authority of the jury, trial court, and appellate court, and their relationship to one another. Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony. (*People v. Holmes* (1990), 141 Ill. 2d 204, 243.) A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable. (*Tennant v. Peoria & Pekin Union Ry. Co.* (1944), 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409, 412; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623.) Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate ei-

ther way. *Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 799-800; *Ford v. Baker* (1978), 61 Ill. App. 3d 45, 48; *Koris v. Norfolk & Western Ry. Co.* (1975), 30 Ill. App. 3d 1055, 1058; *Johnson v. Princeville Community High School District 206* (1965), 65 Ill. App. 2d 487, 493.

There are established standards to be used in determining whether a directed verdict, judgment *n.o.v.*, or a new trial should be granted. A directed verdict or a judgment *n.o.v.*[1] is properly entered in those limited cases where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick*, 37 Ill. 2d at 510.) In ruling on a motion for a judgment *n.o.v.*, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309-10; *Oberman v. Dun & Bradstreet, Inc.* (7th Cir. 1974), 507 F.2d 349, 353.) Most importantly, a judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence. *Oberman*, 507 F.2d at 353.

> "The standards relating to the direction of verdicts and to the granting of new trials are of course different. In *Pedrick* this court declared: 'We have rather carefully preserved the distinction between the evidentiary situation which will require a new trial [citation], and that justifying direction of a verdict or judgment *n.o.v.* There is, in our judgment, excellent reason for so differentiating to be found in the radically different results of allowance of the two motions, and we believe a more nearly conclusive

---

[1]It is important to note that motions for directed verdicts and motions for judgments *n.o.v.*, although made at different times, raise the same questions, and are governed by the same rules of law. *Butler v. O'Brien* (1956), 8 Ill. 2d 203.

evidentiary situation ought to be required before a verdict is directed [or judgment *n.o.v.* is entered] than is necessary to justify a new trial.'" (*Mizowek*, 64 Ill. 2d at 310, quoting *Pedrick*, 37 Ill. 2d at 509-10.)

The court has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. See *Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087; *Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 91; *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 947.

Alternatively, "[o]n a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence." (*Mizowek*, 64 Ill. 2d at 310; accord *Junker v. Ziegler* (1986), 113 Ill. 2d 332, 339-40.) "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence." *Villa*, 202 Ill. App. 3d at 1089; accord *Topp v. Logan* (1990), 197 Ill. App. 3d 285, 298; *Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 729.

Here, plaintiffs appealed the trial court's denial of their post-trial motion, arguing only for a new trial. Despite this less harsh remedy requested by plaintiffs, the appellate court majority, over the dissent of one justice, reversed the trial court, finding that the jury's verdict was *against the manifest weight of the evidence*. Consequently, it remanded the cause for trial only on the issue of the *amount* of damages, in effect, entering a judgment *n.o.v.* against the defendant. In doing so, the appellate court applied the wrong standard.

The appellate court repeated the mistake that this court previously addressed in *Jardine v. Rubloff* (1978), 73 Ill. 2d 31. In *Jardine*, the appellate court affirmed a judgment against two defendants but reversed a judgment in favor of a third defendant, Otis Elevator, stating that the evidence manifestly favored a finding against the defendant. The *Jardine* appellate court, as did the appellate court here, ignored the *Pedrick* standard when it entered a judgment *n.o.v.* in favor of the plaintiff. In *Jardine*, this court remedied that error, holding that the appellate court did not apply the proper standard in entering a judgment *n.o.v.* against Otis. (*Jardine*, 73 Ill. 2d at 35.) Similarly, we conclude that the appellate court erred in effectively entering a judgment *n.o.v.* without applying the requisite standard.

Next, we must determine whether the trial court erred in denying the motion for a new trial. The standard that was mistakenly utilized by the appellate court in determining whether to enter a judgment *n.o.v.*, that the jury's verdict was against the *manifest weight of the evidence*, is instead to be used in determining whether to grant a *new trial* (*Mizowek*, 64 Ill. 2d at 310), the application of which is addressed to the sound discretion of the trial court (*Torrez v. Raag* (1976), 43 Ill. App. 3d 779, 782; *Scott v. Fite* (1972), 7 Ill. App. 3d 672, 673). A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 548; *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1087; *Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 626; *Yocco v. Barris* (1973), 16 Ill. App. 3d 113, 115.) In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. (*Reidelberger*, 83 Ill.

2d at 549.) Furthermore, it is important to keep in mind that " '[t]he presiding judge in passing upon the motion for new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility.' " (*Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 173-74, quoting *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 47.) If the trial judge, in the exercise of his discretion, finds that the verdict is against the manifest weight of the evidence, he should grant a new trial; on the other hand, where there is sufficient evidence to support the verdict of the jury, it constitutes an abuse of discretion for the trial court to grant a motion for a new trial. *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 270-71; *Morella v. Melrose Park Cab Co.* (1965), 65 Ill. App. 2d 175, 181-83.

The jury in this case heard conflicting testimony as to what, if any, injuries the plaintiffs sustained as a result of the accident in question. With respect to the issue of damages, plaintiffs' counsel presented the testimony of both Carlos and Mary, as well as that of the chiropractor and physician who examined them, Dr. King and Dr. Miller, respectively. The defendant, on the other hand, relied primarily upon the testimony of his examining physician, Dr. Frederick, to refute the testimony of the plaintiffs' witnesses.

Essentially, the following evidence was elicited to support plaintiffs' position that they incurred damages as a result of defendant's negligence: the collision in question allegedly caused approximately $400 in damage to the front bumper and grill of plaintiffs' car, while causing between $800 and $900 damage to defendant's vehicle; Carlos Maple testified that he began to develop pain and stiffness in his neck and back approximately one week after the accident; no evidence as to any accidents or injuries was introduced that would explain the cause of

Carlos' symptoms, other than the collision in question; and Carlos testified that he experienced constant discomfort in his lower back and developed radiating pain in his legs, and that his neck symptoms were intermittent in nature.

On initial examination of Carlos, Dr. King discovered cervical and lumbar muscle spasms, as well as other injuries to his neck and back; Carlos was able to raise his legs only 45 degrees in a straight leg maneuver, indicating some nerve root or disk pathology. Dr. King's treatment for Carlos consisted of moist heat, ultrasound, muscle stimulation and manipulation; Dr. King testified that the conditions for which he treated Carlos were related to the automobile collision of October 8, 1986, and that part of Carlos' condition was permanent in nature.

Dr. Miller, the orthopedic surgeon to whom Dr. King referred Carlos, first saw him on April 6, 1987, and his examination revealed limited range of motion in his cervical spine, tenderness in his trapezius muscle, and sensation deficiencies over his left arm; Dr. Miller interpreted the CT scans taken of Carlos, in conjunction with the radiology reports of the CT scans, and opined that Carlos suffered a bulging cervical disk, a bulging lumbar disk with minimal herniation, and two other herniated lumbar disks; Dr. Miller testified that, in his opinion, the automobile accident caused the complained-of conditions.

Mary Maple, a passenger in the vehicle driven by Carlos, had been involved in a prior automobile accident in 1978, after which she suffered neck and back problems. Prior to the October 8, 1986, accident, she had been treated at Barnes Hospital for arthritis, which caused back pain. Mary testified, however, that her neck and back symptoms had improved since the 1978 accident; she further testified that the impact with defendant's vehicle caused her to jerk her neck and body even though she tried to brace herself on the dashboard of the

automobile. Mary started to develop pain and stiffness in her neck and back within a week of the accident; she first saw Dr. King on October 21, 1986. Dr. King found the range of motion in Mary's neck was restricted and caused her pain; the compression test was positive, demonstrating possible inflammation and nerve root involvement; and Dr. King noted palpable cervical spasm. Mary's cervical X rays revealed an advanced degenerative process with multiple spurs and osteophytes; treatment consisted of muscle stimulation, ultrasound and moist heat to reduce inflammation and muscle spasm, and to increase muscle tone. Mary testified that these treatments, along with home exercise, helped her. Dr. King released Mary on an as-needed basis in February 1987; he further opined that the automobile accident of October 8, 1986, aggravated Mary's preexisting degenerative condition. Finally, it was shown that defendant's expert witness, Dr. Frederick, did not examine the plaintiffs until August 31, 1987, almost 11 months after the accident.

On the other hand, the following evidence was elicited by the defense counsel to prove that defendant's negligence was not the proximate cause of the plaintiffs' injuries. A photograph of the front of plaintiffs' car taken after the accident, and introduced into evidence by defendant, does not disclose any damage. Neither plaintiff struck any part of his or her body against the interior of the automobile on impact; plaintiffs did not lose consciousness or sustain any cuts, bumps, bruises or abrasions from the accident. At the scene, both plaintiffs indicated that they were all right. Two weeks later, only after receiving a flyer in the mail from a local chiropractor, did the plaintiffs first seek medical treatment. According to Dr. King, Carlos indicated no difficulty in excessive standing, riding, walking or bending; Carlos' reflexes were normal, and he could bend over; further,

according to Dr. King, by July of 1987, Carlos had normal ranges of motion and no muscle spasms. With regard to Mary, no spasms were noted by Dr. King on his initial examination; a straight leg raise maneuver and her reflexes tested entirely normal; and there was nothing in her history sheet noting difficulty in her standing, riding, bending or lifting. Dr. King eventually referred Carlos to an orthopedic surgeon, Dr. Miller, who testified that on his initial examination, Carlos had a full range of motion in his lower back, and no problems with his reflexes. In the winter following the accident, Carlos even went to work stripping the interior of boxcars, arguably strenuous labor.

Dr. Frederick, a board certified general surgeon, examined both Carlos and Mary; Dr. Frederick's examination of Carlos revealed no objective evidence of injury. Dr. Frederick also stated that he found no evidence whatsoever from history or clinical findings that Carlos has, or ever had experienced, a disc injury. He testified that any discomfort on Carlos' part could be accounted for by his obesity, as he weighed 300 pounds at the time of the accident. Dr. Frederick's findings on Mary were similarly normal for a person of her age. He believed that neither plaintiffs' subjective complaints were related to the automobile accident in question. Mary suffered from degenerative arthritis in her spine, which predated the accident and could account for her pain and stiffness. In addition to the arthritis, she was also obese, and had been involved in a prior automobile accident in 1978, after which she suffered neck and back problems. He believed that her complaints were exaggerated, related to the prior arthritic conditions and infirmities, and had nothing to do with the latest automobile accident. Finally, even though the plaintiffs claim that Dr. Frederick conceded that plaintiffs may have been slightly injured and that these injuries could have been caused by the car

accident, a review of the record reveals that Dr. Frederick drew no such conclusions.

As outlined above, the defendant brought forth considerable direct and circumstantial evidence that plaintiffs suffered no injuries as a result of the accident. After reviewing this evidence, it is clear that the trial court did not abuse its discretion in denying plaintiffs' motion for a new trial.

The credibility issues in this trial were especially significant in light of plaintiffs' delay in symptoms and treatment, the subjective nature of their complaints, the photographic evidence showing the minor nature of the impact, and Dr. Frederick's findings. The question of whom to believe and what weight to be given all of the evidence was a decision for the trier of fact, whose determinations should not be upset on review unless manifestly erroneous (see *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 725), a conclusion which cannot be drawn in this instance.

We agree with the appellate court dissent, which states: "I cannot agree that the jury's finding is palpably erroneous and wholly unwarranted by the evidence. The jury could in fact have properly found for the defendant because defendant's expert witness, Dr. Raymond Frederick, testified that Carlos and Mary Maple were not injured in the accident, and that their injuries, if any, were caused by unrelated circumstances." 214 Ill. App. 3d at 1071 (Chapman, J., dissenting).

Consequently, we find that the appellate court erred in reversing the trial court's decision, by utilizing an incorrect standard, whereby it effectively granted a motion for a judgment *n.o.v.* Furthermore, we conclude that the trial court did not abuse its discretion in denying plaintiffs' motion for a new trial, as the jury's verdict was not against the manifest weight of the evidence.

For the reasons set forth above, the judgment of the appellate court is reversed. In addition to the main issue discussed in this opinion, plaintiffs presented two other issues for appellate court review: whether plaintiffs were prejudiced by (1) the testimony of Dr. Frederick, to the effect that the hospital at which plaintiff received a CT scan was predisposed to making diagnoses involving disk trauma; and (2) the admission at trial of surprise evidence of previously undisclosed repairs to defendant's vehicle. Since the appellate court elected not to review these issues, this cause is remanded to the appellate court to provide it with the opportunity to address them now.

*Judgment reversed;*
*cause remanded.*