GEORGE ASPLUND *et al.*, Indiv. and as Special Adm'rs of the Estate of Linda Asplund, Deceased, Plaintiffs-Appellants, v. SILICA SAND TRANS-PORT, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—92—4028

Opinion filed September 21, 1993.—Rehearing denied October 18, 1993.

Joseph A. Terc, of Chicago, for appellants.

Schoen & Smith, Ltd., of Chicago (Lee J. Schoen and Carolyn M. Diggins, of counsel), for appellees Silica Sand Transport, Inc., and Robert E. Maier.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs George and Dorothy Asplund brought this action individually and as special administrators of the estate of their daughter, Linda Asplund, who died in an automobile accident when the car in which she was a passenger and which was driven by codefendant Scott Gilday collided with a semi-trailer truck operated by codefendant Robert A. Maier, who was employed by codefendant Silica Sand Transport, Inc. (Silica). Plaintiffs' complaint alleged that Linda's death was caused by Maier's negligent operation of Silica's truck. The complaint also charged that Gilday was negligent in failing to keep a proper lookout and in failing to obey a stop sign. The jury found that Gilday was 100% negligent and returned a verdict against him for $1,250,000; it also found in favor of Maier and Silica. Plaintiffs appeal the verdict in favor of Maier and Silica.

The tragic accident which gave rise to this litigation occurred on June 25, 1986, at the intersection of Route 59 and Shoe Factory Road in Hoffman Estates. Route 59 is a two-lane preferential highway for vehicles traveling north and south, and the speed limit is 50 miles per hour for traffic approaching the intersection. Shoe Factory Road is an east-west, two-lane highway with stop signs controlling traffic approaching Route 59 in both directions. Both roadways fan into four lanes at the intersection, thus providing a lane on each roadway for vehicles making left-hand turns.

Maier, who had been employed as a truck driver by Silica since 1984 and who was called by plaintiffs as an adverse witness, testified to the following events which occurred on the night in question. At about 10:30 p.m., he was on the way to completing his third and last trip of the day, carrying 7,400 pounds of sand from Silica's home base in Wedron to Barrington in a Peterbilt semi-tractor trailer. Although the truck had over 500,000 miles of use, Maier testified that its brakes, tires and horn were in working order, that both the trailer and the cab were well-lit with running lights, and that his low-beam headlights were on while he was driving that night.

Maier was proceeding north on Route 59 toward Shoe Factory Road when he observed the headlights of a van driven by John Dregacz heading westbound on that road toward Route 59. Maier testified that he was traveling at a speed of approximately 45 miles per hour, that he had an unobstructed view of the roadway ahead of him, that the weather that night was clear and that the pavement was dry. After Dregacz's vehicle had come to a stop at the stop sign, Maier turned his attention to his left and saw the vehicle driven by Gilday

proceeding eastward on Shoe Factory Road come to a sudden halt and "nosedive" just before the stop sign. Once he was sure that Gilday's vehicle had stopped, he turned his attention once more to Dregacz's van and saw that it remained motionless at the stop sign. Maier then looked directly ahead of him, but immediately thereafter, he felt a sudden crash and was tossed around in the cab. He testified that because he never saw Gilday's vehicle enter the intersection, he did not have time to apply his brakes, sound his horn, or take any other evasive action. The truck eventually stopped when the front bumper of Gilday's car became wedged against its tires. Maier further testified that Gilday's vehicle came to rest in a ditch northwest of the intersection and caught fire.

Gilday was also called as an adverse witness and testified that on the evening in question, he was driving Erica Greenberg and Linda home. He proceeded eastbound on Shoe Factory Road with his arm around Erica, who was seated between Linda and himself. Gilday testified that he was traveling at 45 miles per hour as he approached the stop sign at the intersection of Route 59 and that he was "commit-[ted] to a decision to stop prior to getting there." He did not clearly remember stopping at the intersection or seeing any other vehicles present there, however, and the next event which he could recall while on the stand was seeing his car aflame in the ditch adjacent to the roadway.

Erica Greenberg testified that Gilday did not come to a complete stop at the stop sign at the intersection of Shoe Factory Road and Route 59; instead, she stated, he rolled through it, performing what she termed a "California stop." Erica further testified that although she was facing right (south) while talking to Linda, she did not notice the truck until immediately before the impact.

Dregacz testified that at about 10 p.m. on the night of the accident, he was returning from work, traveling westbound on Shoe Factory Road. As he reached Route 59, he stopped at the stop sign and activated his turn signal in anticipation of making a left-hand turn onto southbound Route 59. As he was prepared to turn, however, he saw Gilday's vehicle standing at the stop sign on Shoe Factory Road on the other side of Route 59. Dregacz then noticed several cars proceeding southbound on Route 59, and when they had cleared, he waited for Gilday to travel across Route 59 and continue eastward on Shoe Factory Road. Gilday, however, for no apparent reason, "crawl[ed]" forward in a stop-and-go manner, traveling, in his opinion, no faster than five miles per hour. At some point, while waiting for Gilday's vehicle to proceed through the intersection, Dregacz

looked to his left and observed the running lights of the trailer truck as it was going northbound on Route 59. He expected Gilday to accelerate and to cross the intersection before the truck arrived; instead, he just continued to inch forward. Dregacz saw the headlights on the truck "bounce," but he could not tell whether it was the result of the truck's hitting bumps or if the driver was flashing his bright lights in order to warn the vehicle in the intersection. When the truck closed to within 40 or 50 yards of the intersection and the accident appeared to be imminent, Dregacz sounded his horn to alert Gilday, but it was to no avail, for the truck plowed into the car, hurling it into a nearby ditch.

Scott St. John, a paramedic for the Hoffman Estates fire department, testified that after he had done all that he could for Linda at the scene of the accident, he took her in his ambulance to Humana Hospital in Hoffman Estates, where she died later that morning from the injuries she suffered in the accident.

Lieutenant Paul Richardson, head of the traffic investigation section of the Hoffman Estates police department, who had investigated the accident, testified that an individual's reaction time, that is, the time it takes an operator of a vehicle to perceive a hazard and shift his foot from the gas pedal to the brake, is approximately three-quarters of a second to one second. He also testified that a vehicle travels approximately 1.47 feet per second for every mile per hour of speed. Richardson also estimated that the distance between the stop sign where Gilday's vehicle is alleged to have stopped and the point of impact was around 40 or 50 feet.

After all motions for directed verdicts were denied, the jury, as we have already noted, returned a verdict in favor of plaintiffs and against Gilday in the amount of $1,250,000. The jury found that he was 100% negligent; thus finding, of course, in favor of Maier and Silica and against plaintiffs. Plaintiffs' post-trial motions were denied, and after they agreed to accept $100,000 from Gilday in full satisfaction of their judgment against him, they brought this appeal, challenging the trial court's denial of their motion for a directed verdict against Maier and Silica on the issue of liability and its denial of their motion for a judgment *non obstante veredicto* or, in the alternative, for a new trial.

A

The standards of review we must apply when passing upon a trial court's denial of a motion for a directed verdict, a judgment *n.o.v.*, and a new trial are by this time well settled and well defined. A trial

court should enter a directed verdict or a judgment *n.o.v.* only if all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14); and that standard also governs our consideration of a trial court's denial of a party's motion for a directed verdict or a judgment *n.o.v. Knight v. Haydary* (1992), 223 Ill. App. 3d 564, 569, 585 N.E.2d 243, 247, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 629.

Our supreme court held in *Pedrick*, however, that a different standard is to be applied in reviewing a motion for a new trial: a trial court should set aside a jury's verdict and grant a new trial only when its verdict is contrary to the manifest weight of the evidence. (*Pedrick*, 37 Ill. 2d at 509-10.) A verdict will be deemed to be against the manifest weight of the evidence only where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based on the evidence. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.) A trial court's denial of a motion for a new trial will not be reversed absent a clear abuse of discretion. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513.

■ Moreover, our supreme court has recently warned:

"[I]t is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony. [Citation.] A trial court cannot reweigh the evidence and set aside a verdict merely because *** the court feels that other results are more reasonable. [Citations.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way. [Citations.]" *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 511-12.

B

■ The law with respect to the duties charged to drivers on preferential and nonpreferential roads is also well established in this State. Under section 11—904(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—904(b)), a driver on a roadway which is governed by a stop sign that intersects with a preferential highway must yield the right-of-way to any vehicle which is approaching so closely on the roadway as to constitute an immediate hazard to his vehicle's moving across or within the intersection. (*Salo v. Singhurse*

(1989), 181 Ill. App. 3d 641, 643, 537 N.E.2d 339, 340.) Moreover, "[a] motorist on a preferential highway has a right to expect a car approaching along a secondary road, controlled by a stop sign *** to obey the stop sign and yield the right of way." (*Thomas v. Lynch* (1978), 59 Ill. App. 3d 542, 545, 375 N.E.2d 859, 861; accord *Kofahl v. Delgado* (1978), 63 Ill. App. 3d 622, 626, 380 N.E.2d 407, 410.) The rationale for this rule is quite simply that:

"Stops signs are erected for the obvious purpose of requiring motorists to yield to vehicles on through highways. If the motorist on the through highway had to travel at such a speed that he could stop his car in time to avoid collisions with vehicles which ignore stop signs on intersecting roads, the purpose of having a through highway in the first place would be entirely thwarted." *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 74, 235 N.E.2d 17, 22.

While a driver on a preferential highway generally has the right-of-way over motorists on a secondary roadway controlled by a stop sign, he or she does not have an absolute or unqualified privilege to assert it regardless of the circumstances. (*Thomas*, 59 Ill. App. 3d at 545, 375 N.E.2d at 861.) He may not proceed heedlessly into obvious danger, and he has a duty to exercise due care in approaching and crossing an intersection and to drive as a prudent person would in order to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered. (*Guy v. Steurer* (1992), 239 Ill. App. 3d 304, 308, 606 N.E.2d 852, 855; *Conner v. McGrew* (1961), 32 Ill. App. 2d 214, 217, 177 N.E.2d 417, 418.) It is the quintessential function of the jury to determine the question of whether a driver on a preferential highway conformed his conduct to the requisite standard of care in avoiding an accident, since it necessarily involves the consideration of the relative speeds and distances of the vehicles at the time of the accident. *Guy*, 239 Ill. App. 3d at 308, 606 N.E.2d at 855; *Thomas*, 59 Ill. App. 3d at 545, 375 N.E.2d at 861; *Gettney v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628, 630.

## C

Plaintiffs argue that the trial court erred in not directing a verdict, entering a judgment *n.o.v.*, or granting a new trial on their behalf, claiming that Gilday's vehicle traveled between 40 and 50 feet at 5 miles per hour before it was struck by the semi-trailer; and based on the testimony of Lieutenant Richardson that a vehicle moves 1.47 feet per second for every mile per hour of speed, plaintiffs deduce

that Gilday was traveling 7.35 feet per second. Therefore, they conclude, it took him between 5.46 and 6.82 seconds to cover the 40 or 50 feet to reach the point of impact; consequently, even if Maier had looked back toward Dregacz at the exact second that Gilday began his movement toward the intersection, he would have to have been looking at Dregacz's vehicle for five to seven full seconds in order not to have seen Gilday's vehicle at all before the collision. Accordingly, they urge, no reasonable jury could find that Maier was not at least partially at fault for failing to take some evasive action in order to prevent the accident, since either his testimony that he never saw the car is incredible, or he was necessarily negligent for taking his eye off the road for such an extended period of time.

We disagree. A similar situation was presented in *Salo*, where the plaintiff was traveling south on a preferential highway, while the defendant was proceeding eastbound on a roadway which was controlled by both a stop sign and a red flashing light. As the plaintiff neared the intersection, he glanced to his right and observed the defendant's car approaching the stop sign. The plaintiff then turned his eyes back toward the road in front of him, and when he proceeded through the intersection, the defendant's car struck the passenger side of his car. After a trial, the jury awarded the plaintiff damages in the amount of $24,000, but reduced that amount to $9,600 because it found him to be 60% comparatively negligent. *Salo*, 181 Ill. App. 3d at 642, 537 N.E.2d at 340.

We reversed the jury's reduction of the plaintiff's award, holding that since he had the right-of-way, he was entitled to expect that the defendant would stop at the stop sign, and that it appeared that the plaintiff could have done nothing to avoid the collision. (*Salo*, 181 Ill. App. 3d at 643, 537 N.E.2d at 341.) We reasoned:

> "The [defendant] had a duty to stop and yield the right-of-way to approaching cars. Instead, she rolled into the intersection and hit [the plaintiff's] car after he was already in the intersection at a time when there was nothing he could do to avoid the collision. [The plaintiff] could not reasonably be expected to anticipate [the defendant's] entering the intersection in disregard of her duty to yield. But for [the defendant's] running the stop sign or not looking, the collision would not have occurred. [Citations.] For the jury to attribute 60% of the fault to [the plaintiff] under such circumstances is not only contrary to the manifest weight of the evidence, but also beyond comprehension and reason. *** If we were to follow the jury's apportionment in this case, every time a driver on a preferential highway saw an

approaching car on an intersecting road or drive, he essentially would be required to stop to make sure the other car obeyed the stop sign and stayed there or else be found negligent." *Salo*, 181 Ill. App. 3d at 643-44, 537 N.E.2d at 341.

■ We find the reasoning employed in *Salo* to be eminently applicable to the facts in the case at bar. Plaintiffs concede that once Maier observed that Gilday's vehicle was stopped at the stop sign, he had a right to presume that the driver would not proceed into the intersection until he had cleared it. They nevertheless argue that, as a matter of law, Maier breached the applicable standard of care since he had plenty of time to take some sort of evasive action in order to avoid colliding with Gilday's vehicle and yet failed to do so.

Plaintiffs fail to appreciate, however, that even were we to presume, *arguendo*, that Maier breached the standard of care, the jury most certainly must have at least determined that Maier's conduct was not the proximate cause of the accident, both issues being within the province of the jury. See *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382, 609 N.E.2d 290, 293 ("To recover damages based on negligence, the plaintiff must allege and prove that the defendant owed a duty to the plaintiff, a breach of that duty, and that the breach was the proximate cause of plaintiff's injuries"); *Guy*, 239 Ill. App. 3d at 309-10, 606 N.E.2d at 856 ("A driver's failure to observe speed appropriate to conditions and maintain a proper lookout, or any other acts or omissions, do not render that driver negligent if those acts are not the proximate cause of [the accident]"); *Salo*, 181 Ill. App. 3d at 643, 537 N.E.2d at 341 ("Whether or not the jury believed [the plaintiff] should have exercised more caution under the circumstances *** any negligence on his part was not the proximate cause of the collision").

Therefore, in order to sustain their burden of proving that the jury's general verdict in favor of Maier and Silica was against the manifest weight of the evidence, plaintiffs must establish not only that Maier breached the applicable standard of care, but also that *as a matter of law* his breach was the proximate cause of the accident. (*Guy*, 239 Ill. App. 3d at 307, 606 N.E.2d at 855.) Here, even were we to agree with plaintiffs that Maier should have at least seen the car a few seconds before impact, it was nonetheless entirely reasonable for the jury to have determined that any evasive action taken by him, such as slamming on his brakes, would not have prevented the accident, for it was the jury which was in the best position to evaluate the relative speeds and distances and all of the other factors that caused this accident.

In sum, plaintiffs' argument that Maier breached the standard of care and that such breach was the proximate cause of the accident was urged as fc·cefully to the jury as it was here; the jury rejected it, and so do we, for it had more than a reasonable basis upon which to so conclude. Accordingly, we affirm the trial court's denial of plaintiff's motions for a directed verdict, judgment *n.o.v.*, and a new trial.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.