DIANE FLOROS BLACK *et al.*, Plaintiffs-Appellants, v. ROBERT LAGGREN, Defendant-Appellee.

First District (2nd Division)    No. 1—99—1451

Opinion filed May 2, 2000.

Kevin E. Bry, of Oak Park, for appellants.

Kenneth J. Malec, of Paulsen & Malec, Ltd., of Wheaton, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

This action resulted from an automobile accident that occurred when the car driven by defendant Robert Laggren collided with the rear of a stopped pickup truck being driven by plaintiff Mary Pavkovich. Plaintiff Diane Floros was a passenger in the truck. A jury returned a verdict for defendant and against plaintiffs on liability. The plaintiffs appeal, contending that the evidence presented proved defendant's liability overwhelmingly. Plaintiffs also contend that the defense counsel made improper remarks that prejudiced the jury. The trial court refused to either grant plaintiffs motion for a directed verdict on the issue of liability or enter a judgment *n.o.v.* or grant a new trial. We affirm.

## BACKGROUND

On September 30, 1992, Diane Floros (Floros) was the passenger in a General Motors pickup truck driven by Mary Pavkovich. Floros' brother, Tony Floros, was the owner of the truck. The two women were driving southbound on McCormick Avenue, toward Oakton Street, in Skokie, Illinois. Pavkovich testified that, as they approached the intersection, traffic was stopped because of a red light. According to the plaintiffs, there were a number of cars in front of them, and they stopped approximately 200 feet from the intersection.

Robert Laggren was driving a car southbound on McCormick Avenue when his car collided with the rear of the truck. According to Laggren, he was looking down to adjust his radio prior to the accident. When he looked up, there was not enough time to avoid the collision.

Both plaintiffs testified that they were injured from the impact of the collision. Floros claimed loss of consciousness. Pavkovich exited the truck to assess its damage and to call the police. Pavkovich testified that she noticed extensive damage to the front area of Laggren's car and damage to the truck's bumper and taillights. Laggren testified that he asked the plaintiffs if they were hurt. They said no.

The paramedics arrived at the accident scene and checked the women. Both women signed waivers against medical advice and drove home. They stated that they returned home to return the truck to Tony Floros, who was returning to Indiana that evening.

The next morning the plaintiffs went to the emergency room at Edgewater Hospital. They were admitted for two days of testing and observation. They were treated by Dr. Ojea, whom they both knew. Dr. Rubinstein, an orthopedic surgeon, and Dr. Burnstine, a neurologist, also treated the plaintiffs during their stay.

After leaving the hospital, the plaintiffs received physical therapy at Edgewater, as requested by Dr. Ojea. On their own, they began seeing a chiropractor, Dr. Kazonis. Pavkovich later received treatment at Illinois Masonic Medical Center for swelling and pain in her chest area, which she attributed to injuries received during the collision. Pavkovich was subsequently terminated from two jobs. She claims that she was terminated because the injuries sustained during the accident prevented her from adequately performing her job duties.

## ANALYSIS

### I

■ Verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513 (1967). The plaintiffs argue that the evidence, when viewed in a light most favorable to Laggren, overwhelmingly favors the plaintiffs on the issue of liability. For the reasons that follow, we disagree and hold that the court did not err in refusing to grant either a directed verdict or a judgment *n.o.v.*

A plaintiff may recover in a negligence action only by proving each element of the action, *i.e.*, the existence of a duty, a breach of that duty, an injury proximately resulting from the breach, and damages. *Lucker v. Arlington Park Race Track Corp.*, 142 Ill. App. 3d 872, 873, 492 N.E.2d 536, 538 (1986). As a driver who was following another vehicle, the defendant, Laggren, had a duty to follow plaintiffs at a sufficient speed and distance so that he could stop or slow down suddenly if necessary. A driver must also maintain a safe lookout for traffic ahead. *Hickox v. Erwin*, 101 Ill. App. 3d 585, 588, 428 N.E.2d 520, 522 (1981). It is disputed as to why the plaintiffs were stopped, but this does not negate Laggren's duty to maintain a lookout and to be prepared to stop suddenly. In our view Laggren breached his duty of care.

This is because he admitted that he was looking down to adjust his radio, for however short a time, and was not keeping a proper lookout at the time the collision occurred.

However, although Laggren breached his duty of care, based on the evidence, we cannot say that a reasonable jury could not find against the plaintiffs on the issue of liability. This is because weighing the evidence and deciding the credibility of the witnesses are the province of the jury. *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127 (1981). And, the record in this case establishes that numerous factual issues were raised about the nature and extent of the injuries suffered by the plaintiffs. Also, plaintiffs' credibility was at issue.

Specifically, the record in this case established that, after the accident, Laggren testified that he asked the plaintiffs if they were hurt, and both replied no. After being treated by the paramedics, the plaintiffs refused to seek medical treatment and decided to return the truck to Mr. Floros. After returning the truck, the plaintiffs did not immediately seek medical treatment, instead waiting until the next morning before going to the hospital. Both plaintiffs claimed to have suffered a concussion during the accident, yet Pavkovich was able to drive home, and neither required medical attention until the following day.

When plaintiffs went to the emergency room, the notes taken by the attending nurses reflected that neither complained of a loss of consciousness, nausea or dizziness. Conversely, the charts stated both were alert and oriented. Then too, after examining the plaintiffs, the emergency room physician was ready to discharge them. However, without examining the plaintiffs, Dr. Ojea requested they be admitted into the hospital.

Although plaintiffs' witness, Dr. Burnstine, a neurologist, diagnosed the plaintiffs as having concussions, his diagnosis was based mostly on information supplied to him by the plaintiffs. Both plaintiffs complained to him of nausea and dizziness, which are symptoms of a concussion, and Floros complained of losing consciousness.

Both plaintiffs also complained of neck and back pains, and Pavkovich complained of numbness and weakness in her left arm. The tests and X rays that were performed on the plaintiffs, objective measuring sticks, were negative. While it is true that the tests performed would not have shown soft tissue injuries, the results of the tests given conformed with the defendant's contention that no injury was caused to either plaintiff as a result of this accident.

Then, too, a few months after the accident, Dr. Ojea signed a letter that stated Pavkovich was able to lift residents or heavy objects in the

nursing home as required for completion of her job. Yet, Pavkovich claimed she was terminated because she was physically unable to adequately perform her job duties because of her injuries. Also, the defense presented a letter in which Pavkovich states that she resigned because of conflicts with her supervisor and not for medical reasons.

The photographs taken of the truck after the accident revealed little if any damage to the vehicle. Pavkovich, when looking at the photographs, was unable to identify any substantial damage to the truck. Also, there was no evidence in the record that reflected that the truck needed any repairs.

## II

■ The standard of review where the trial court has denied a motion for a new trial is whether the jury verdict is against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512 (1992). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. *Gustafson*, 151 Ill. 2d at 454, 603 N.E.2d at 512. It is the jury's function to weigh contradictory evidence, judge the credibility of the witness, and draw the ultimate conclusion from the facts. *Guzeldere v. Wallin*, 229 Ill. App. 3d 1, 15, 593 N.E.2d 629, 639 (1992). After reviewing the record in the instant case, we hold the verdict was not against the manifest weight of the evidence. Accordingly, the trial court did not err in denying a motion for a new trial.

## III

During defense counsel's closing argument, counsel argued there were no cars in front of the plaintiffs prior to the accident, implying the plaintiffs stopped suddenly in the middle of the street. The plaintiffs argue that these comments were prejudicial and warrant a new trial because they suggested that the plaintiffs were contributorily negligent. The court granted the plaintiffs summary judgment, striking Laggren's affirmative defense of contributory negligence, and banned the defense from mentioning or suggesting contributory negligence during trial. The plaintiffs argue that this order was disregarded during the defense's closing argument.

■ During the trial, both sides argued about the existence of the cars in front of the plaintiffs. Comments on evidence during closing argument are proper if they are either proved by direct evidence or are a fair and reasonable inference from the facts and circumstances proven. *Wallin*, 229 Ill. App. 3d at 13, 593 N.E.2d at 638. Both parties gave conflicting testimony as to the existence of the cars in front of the plaintiffs. Pavkovich claimed that, when she opened her eyes after

the accident, the cars were moving forward. Laggren claimed that he did not see any cars in front of the plaintiffs. Defense counsel's comments were based on testimony that was heard during trial.

The defense argued that there were no cars in front of the plaintiffs in an attempt to show that because the plaintiffs stopped suddenly it was not unreasonable for Laggren to have hit them. A rear-end collision does not create an automatic inference of negligence; it must be determined if the defendant was acting reasonably or if the collision was unavoidable. *Korpalski v. Lyman* 114 Ill. App. 3d 563, 566, 449 N.E.2d 211, 214 (1983). An attorney is permitted wide latitude in closing argument. For a judgment to be reversed, a closing argument must be clearly improper and prejudicial. *Wallin*, 229 Ill. App. 3d at 13, 593 N.E.2d at 638.

During closing argument, defense counsel stated:

> "MR. MALEC [Defense Attorney]: You are the judges of the evidence and as to who's at fault, as to whether Mr. Laggren was using reasonable care that day."

Although this comment may suggest plaintiffs were contributorily negligent, it also clearly asks the jury to consider if Laggren breached his duty of care. In our view, whether taken separately or collectively, any misstatements of the evidence were slight.

■ The plaintiffs also point to a note that the jury sent to the court that asked: "Some of the jurors want to know what we should do if it is felt both parties were negligent and caused injury?" The court responded that there was no counterclaim made by the defendant against Pavkovich and that Floros was not in control of the car. In our view, this response from the court was adequate. The response connotes that the negligence of the plaintiffs is not an issue in the case.

The judgment of the trial court is affirmed.

Affirmed.

McNULTY and McBRIDE, JJ., concur.