2024 IL App (1st) 240685-U

FIRST DISTRICT,
SIXTH DIVISION
September 20, 2024

No. 1-24-0685

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| RUEBEN HERNANDEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 21 M 1300858 |
| | ) | |
| CAMERON WILLIAMS, | ) | Honorable |
| | ) | Jim Ryan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court did not abuse its discretion by not removing empaneled juror for bias; although juror's wife and plaintiff's wife were co-workers, juror did not personally know plaintiff or his wife and affirmed that he could render an unbiased verdict.

¶ 2   Plaintiff Rueben Hernandez sued defendant Cameron Williams, seeking compensation for injuries sustained in an automobile crash. Following a jury trial, Williams was found negligent, and a judgment was entered against him for $15,600. Williams argues that the trial

court abused its discretion by failing to remove an empaneled juror for bias. We disagree and affirm.

¶ 3                                                    **BACKGROUND**

¶ 4        At 1:50 a.m. on October 10, 2020, at a residential intersection, Williams' vehicle collided with the rear passenger door of Hernandez's vehicle. Hernandez claimed that the accident occurred because Williams negligently failed to comply with a stop sign and yield the right-of-way to Hernandez. Williams denied any negligence and claimed that Hernandez caused the accident by making a sudden stop without warning.

¶ 5        On June 22, 2021, Hernandez filed a negligence action against Williams. The case proceeded to a jury trial on January 9, 2024. Although no court reporter was present during the trial, the parties stipulated to an agreed statement of facts regarding jury selection and the trial proceedings.

¶ 6        During jury selection, the trial court swore in 36 prospective jurors and read a list of potential witnesses expected to testify at trial, including Hernandez's wife, Nelly Miranda. None of the prospective jurors answered affirmatively to the judge's question "Does anyone know any of the parties, witnesses, or attorneys in this case?" The judge allotted each attorney approximately 10 minutes to question the prospective jurors, after which jury selection occurred. No alternate jurors were selected "since [the judge] expected the jury to reach a verdict in this case later that same day."

¶ 7        Hernandez testified that the accident occurred while he was working as a driver for Uber. He had entered the intersection when his vehicle was hit on the passenger side. The other vehicle came from his right, traveling on the intersecting street. Consistent with Hernandez's testimony,

Hernandez's Uber passenger testified that "the other car was turning onto the street the Uber was on and did not yield."

¶ 8 Williams testified he was traveling behind Hernandez's car prior to the accident. He claimed Hernandez "made a sudden stop without warning, causing [Williams] to lose control on the slick pavement. [Williams] swerved to avoid oncoming traffic and struck parked cars on the other side of the road." He denied that his car made contact with Hernandez's car "but acknowledged that his detached bumper may have made contact."

¶ 9 Hernandez reported no injuries at the scene of the accident, but the next day, he began experiencing neck, shoulder, and back pain. He sought emergency room treatment two days later and additional treatment at La Clinica. The pain "initially limited his ability to perform household chores, but *** he felt better a month after the accident." Hernandez's treating chiropractor at La Clinica opined that the accident caused Hernandez's neck, shoulder, and back pain.

¶ 10 Hernandez's wife Nelly Miranda was the sixth and final witness to testify in Hernandez's case in chief. She testified in support of Hernandez's damages, including pain and suffering, loss of normal life, and lost earnings. Before the substance of her testimony, Hernandez's counsel "asked Miranda to introduce herself." Miranda mentioned she had recently been hired by a nonprofit called Association House of Chicago and was about to start her on-boarding training.

¶ 11 After Miranda's testimony, one of the empaneled jurors, Augusten Jaramillo, informed the sheriff that he had information he wanted to share with the court. The court called for a sidebar in chambers where Jaramillo revealed that his wife also works at Association House of Chicago, but he did not know whether his wife had ever met or spoken with Miranda. He personally did not know Miranda or Hernandez, and he stated that there were no other potential

connections between his family and Hernandez's family. He told the judge that he could remain impartial and render an unbiased verdict.

¶ 12    Defense counsel attempted a follow-up question, but the trial judge "interjected before defense counsel finished this question," asserting "the issue had been thoroughly explored and that Jaramillo affirmed his impartiality." The judge then directed Jaramillo to return to the jury room. When defense counsel "asserted his right to question allegations of juror bias," the trial court denied his request for further questioning and admonished him for "speaking out of line in the presence of the empaneled juror."

¶ 13    The jury returned a verdict in favor of Hernandez, awarding him $20,000 but finding him 22% contributorily negligent and assessing recoverable damages in the amount of $15,600. The trial court entered judgment on the jury's verdict.

¶ 14    On January 16, 2024, Williams filed a motion for a new trial, alleging he "was denied his fundamental right to a trial by impartial jury" because the trial court failed to conduct a sufficient factual inquiry into Jaramillo's potential bias and denied defense counsel the opportunity to inquire into the same.  The motion was denied.

¶ 15                                      **ANALYSIS**

¶ 16    Williams argues that the trial court erred by (1) failing to remove Jaramillo for bias, (2) denying defense counsel an opportunity to inquire into Jaramillo's potential bias, and (3) denying Williams' motion for a new trial. We consider these contentions in turn.

¶ 17                           **Failing to Remove Jaramillo**

¶ 18    Williams argues the trial court erred by failing to remove Jaramillo from the jury due to bias. Deciding whether a juror is fit to serve is within the sound discretion of the trial judge, whose determination will not be set aside unless it is against the manifest weight of the evidence.

*Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 45. Our supreme court has emphasized that a finding of bias "must be made from the evidence" and that "[m]ere suspicion of bias is not evidence." (Internal quotation marks omitted.) *Id.* ¶ 46. The party challenging a juror bears the burden of showing that the juror is biased. *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 48 (1993).

¶ 19　　　The record contains absolutely no evidence that Jaramillo was biased. During the sidebar, Jaramillo explained that he did not personally know Miranda or Hernandez. Although his wife worked at the same institution as Miranda, Miranda had just started the job the day before her testimony and had not even begun the on-boarding process. Jaramillo "was unsure if his wife knew Miranda or *** had ever met or spoken with Miranda." Moreover, he "affirmed that he could remain impartial and render an unbiased verdict."

¶ 20　　　Williams asserts that the mere fact that Jaramillo came forward to inform the court of his wife's potential connection to Hernandez's wife is "extraordinary and significant proof of actual bias." To the contrary. The fact Jaramillo was truthful enough to notify the court immediately after Miranda's testimony that his wife and Miranda work for the same organization shows his veracity, not actual bias. Any alleged bias was also flatly contradicted by Jaramillo's statement to the trial court that he could remain impartial and render an unbiased verdict. "Great weight is given to a prospective juror's statement under oath that he can lay aside matters that might indicate bias and that he can render a verdict based on the evidence." *Lambie v. Schneider*, 305 Ill. App. 3d 421, 430 (1999).

¶ 21　　　Williams further theorizes that the trial court would have had difficulty assessing Jaramillo's credibility because he was wearing a face mask. However, there is no evidence the juror's mask hindered the ability of the judge to assess his truthfulness. It is axiomatic that the trial

court has the best opportunity to observe the demeanor and conduct of witnesses and is in the best position to determine their credibility. *In re Stephen K.*, 373 Ill. App. 3d 7, 20 (2007). The trial court stated that it was "fully satisfied with the questioning of the juror," and we will not second-guess its assessment on appeal.

¶ 22    This case is analogous to *Roach*, 157 Ill. 2d at 48, in which a juror learned in the middle of trial that his wife was the patient of one of the defendant doctors, Dr. Zinzilieta. The juror, "far from having a close personal doctor-patient relationship with Dr. Zinzilieta, did not even know for some time that he had any relationship at all. Upon learning of it, he clearly considered the relationship to be between only his wife and Dr. Zinzilieta." *Id.* On these facts, our supreme court held that there was no evidence the juror was biased in favor of Dr. Zinzilieta, and plaintiffs were not prejudiced by his inclusion on the jury. *Id.*

¶ 23    Here, the connection between Jaramillo and Hernandez is even more attenuated than in *Roach*, since Jaramillo did not know whether his wife had ever met or spoken with Hernandez's wife Miranda. Jaramillo certainly did not know Miranda, and since the trial lasted only one day, Jaramillo had no way of being influenced or finding out if his wife had met Miranda. Accordingly, Williams has not met his burden of showing that Jaramillo was biased. The trial court's finding that Jaramillo was fit to serve is not against the manifest weight of the evidence.

¶ 24                                              **Due Process**

¶ 25    Williams argues that his due process rights were violated when the trial court denied him an opportunity to inquire into Jaramillo's potential bias.

¶ 26    Because it is the trial court's duty to manage *voir dire*, the scope and extent of *voir dire* are within the court's discretion, as is the decision to permit supplemental questions by counsel. *Rub v. Consolidated Rail Corp.*, 331 Ill. App. 3d 692, 696 (2002); *In re Commitment of Brown*,

2021 IL App (1st) 191606, ¶ 68. "The standard for evaluating a court's exercise of discretion during *voir dire* is whether the questions posed and procedures employed created a reasonable assurance that prejudice would be discovered if present." *People v. Pineda*, 349 Ill. App. 3d 815, 819 (2004).

¶ 27    We find no abuse of discretion in this case. During the initial *voir dire*, the trial court ascertained that none of the prospective jurors knew Hernandez or any of the witnesses. Williams was permitted to question each of the prospective jurors, including Jaramillo, in detail. When Jaramillo informed the court at the end of Miranda's testimony that she and his wife worked at the same organization, the court inquired into their connection and ascertained that Jaramillo did not personally know Miranda, that he was unsure if his wife knew Miranda, and that he could remain impartial and render an unbiased verdict. Taken as a whole, the questions posed and procedures employed created a "reasonable assurance" (*id.*) that Jaramillo's prejudice would be discovered if present. Any further inquiry by defense counsel would have been duplicative of the court's questioning and based on conjecture. Under the circumstances, the trial court acted within its discretion when it declined counsel's request for supplemental questioning of Jaramillo during the sidebar.

¶ 28    **Motion for a New Trial**

¶ 29    Lastly, Williams argues that the trial court erred in denying his motion for a new trial because the trial court failed to conduct a sufficient factual inquiry into Jaramillo's potential bias and denied defense counsel the opportunity to inquire into the same.

¶ 30    "A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion." *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). We find no abuse of discretion in the trial court's ruling,

since, as discussed, the court conducted a thorough inquiry into Jaramillo's potential bias and acted within its discretion in denying defense counsel's request for supplemental questioning and in permitting Jaramillo to remain on the jury.

¶ 31     Williams nevertheless argues that the trial court's ruling "was contrary to the undisputed facts on record" because of a factual disagreement as to whether Jaramillo was still present when defense counsel attempted to ask him questions and was admonished by the trial court not to ask questions. On the one hand, defense counsel attests that when he attempted to ask Jaramillo how well his wife knew Miranda, the judge responded that the issue had been thoroughly explored and told Jaramillo to return to the jury room. The judge, however, described something different, and is on the record saying defense counsel began shouting questions, but the juror did not hear them because he had left chambers. It was then that the court admonished defense counsel and said he did not get to ask questions without court permission. The court finds this immaterial, for even if the exact timing of defense counsel's questions and the court's admonishment are in dispute, this is unrelated to the issue of whether Jaramillo was fit to serve on the jury. Jaramillo already said he did not know the witness and had no idea of whether his wife did or not. Pressing him further on "how well his wife knew her" would have gone nowhere, since Jaramillo did not know and never spoke with his wife about it before trial ended and a verdict was reached.

¶ 32     Williams also argues that he was "precluded from presenting good-faith arguments" at the hearing on his posttrial motion. The record does not support this assertion. At the beginning of the hearing, the following colloquy occurred:

> "THE COURT: I read *** defendant's motion. I read plaintiff's response, and I read the reply. [Defense counsel], do you have anything to add that is not in your written materials?

DEFENSE COUNSEL: Judge, not—no. I would appreciate being heard on this issue, but everything is laid out in the motion and the reply.

\*\*\*

THE COURT: Okay. So I've read the written materials."

¶ 33    Hernandez's counsel also indicated that he had nothing to add that was not in his written materials. The trial court then analyzed Williams' claims of error and ultimately denied his motion. After the court denied the motion for a new trial and remittitur, defense counsel stated, "Judge, I'd really like to be heard on the juror issue," to which the trial court replied, "I've made my ruling.  You're out of order, and I've made my ruling."

¶ 34    The record reflects that before the court's ruling on the motion, it asked defense counsel if he had anything to add to his motion. Defense counsel said, "everything [was] laid out in the motion and the reply." Not every motion requires oral argument, especially where the court has read all the papers that lay everything out. Accordingly, we do not find that defense counsel was improperly precluded from presenting arguments to the court.

¶ 35                                **CONCLUSION**

¶ 36    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 37    Affirmed.