NOTICE

Decision filed 01/07/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200010-U

NO. 5-20-0010

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| TYREE MCKINNEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 18-L-429 |
| | ) | |
| DANIEL NEWGENT, | ) | Honorable |
| | ) | Andrew J. Gleeson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in granting the plaintiff's emergency motion to bar the testimony of the defendant's expert witness at trial as a sanction for failing to comply with discovery requests and orders. The trial court did not err in denying the defendant's motion for new trial because the jury's verdict was supported by the manifest weight of the evidence.

¶ 2   The plaintiff, Tyree McKinney, filed a complaint against the defendant, Daniel Newgent, for injuries the plaintiff sustained as a result of a motor vehicle accident. A jury found in favor of the plaintiff, and the trial court entered judgment against the defendant on the jury's verdict. The defendant appeals the trial court's judgment, asserting that the jury's verdict was against the manifest weight of the evidence. The defendant also claims

1

the court abused its discretion by barring the defendant's retained expert witness from testifying at trial as a sanction for the defendant's failure to comply with discovery requests and orders. We affirm.

¶ 3                                    BACKGROUND

¶ 4     On February 22, 2018, the plaintiff was sitting in traffic on I-64 when his vehicle was struck from behind by the defendant's automobile. The plaintiff sustained injuries to his neck and back as result of the accident. On June 19, 2018, the plaintiff filed suit against the defendant, seeking damages for the injuries he sustained because of the accident.

¶ 5     On September 17, 2018, the trial court entered an agreed case management order that established various discovery deadlines. These deadlines included that (1) the plaintiff shall identify any controlled or retained witnesses by January 15, 2019; (2) the plaintiff shall make any controlled or retained opinion witnesses available for deposition by March 15, 2019; (3) the plaintiff shall serve Rule 213(f) interrogatories (see Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018)) on the defendant by April 15, 2019; (4) the defendant shall obtain an exam, disclose the expert reports, and answer the plaintiff's Rule 213(f) interrogatories by July 15, 2019; and (5) the defendant's retained opinion witnesses shall be made available for deposition by August 15, 2019. The case management order provided that all discovery would be completed by August 15, 2019. The case management order also set the final pretrial conference for October 15, 2019, and the trial for October 21, 2019.

2

¶ 6    On October 10, 2018, the plaintiff sent the defendant his Rule 213 witness disclosures, identifying Dr. Scott Morrison and Dr. Kevin Rutz, the plaintiff's treating physicians, and Dr. Robert Fast, the plaintiff's chiropractor, as independent expert witnesses. At the time of his disclosure, the plaintiff simultaneously disclosed the anticipated testimony for each of these witnesses. Within this time frame, the plaintiff provided the defendant with information regarding the plaintiff's medical treatment, copies of the plaintiff's medical records, and blank medical authorizations. The plaintiff's disclosure complied with the September 17, 2018, case management order.

¶ 7    In March 2019, the defendant sent his initial records request to the plaintiff's primary care physician, Dr. Morrison, who responded by sending medical records pertaining to the plaintiff. On or about April 24, 2019, the defendant discovered that Dr. Morrison's office had mistakenly omitted some of the plaintiff's records, so the defendant's counsel made an additional request for records from Dr. Morrison's office. On May 1, 2019, the defendant also requested medical records from Tina Cloin, a physician's assistant in Dr. Morrison's office, under the mistaken belief that the plaintiff had received treatment from Cloin. Approximately two months later, on or about July 5, 2019, the defendant realized he had not received any records from Cloin and followed up with the provider.

¶ 8    On Friday, July 12, 2019, the defendant confirmed that he had received all the plaintiff's medical records, and that there were no separate medical records other than what had already been produced by the plaintiff. On Monday, July 15, 2019, the deadline for the defendant to obtain an examination of the plaintiff, disclose his expert report, and

answer the plaintiff's Rule 213(f) interrogatories, defense counsel emailed plaintiff's counsel, indicating that they had recently confirmed their receipt of all of the plaintiff's medical records. Defense counsel advised plaintiff's counsel that, "assuming we now have all the medical records for your client's treatment, and for our 213 expert disclosure, we will probably proceed with having a records review completed by Dr. Peter Anderson. Once we have his opinions, we will pass them on to you." At this time, defense counsel also requested the discovery deposition of Dr. Morrison. The following day, the defendant scheduled the discovery deposition of Dr. Morrison for August 27, 2019, more than five months beyond the deadline established by the case management order.

¶ 9    On July 24, 2019, the plaintiff set the video evidence deposition of Dr. Rutz for October 18, 2019, in anticipation of trial. Several days later, the defendant requested Dr. Rutz's discovery deposition. The defendant scheduled Dr. Rutz's discovery deposition for October 11, 2019, almost seven months beyond the deadline established by the case management order.

¶ 10    On August 15, 2019, the date all discovery was to be completed, the defendant filed a motion for extension of time, requesting that the trial court extend the deadlines in the case management order in order to take discovery depositions of the plaintiff's treating physicians, the deposition of the defendant's retained expert, and any possible lay witnesses. In the motion, the defendant indicated that he had disclosed his retained expert witness, Dr. Anderson, but that Dr. Anderson's report had not yet been received, nor had Dr. Anderson's deposition been taken.

4

¶ 11    On August 19, 2019, the defendant provided his Rule 213 disclosures to the plaintiff. The defendant's disclosure identified Dr. Anderson, with Illinois Southwest Orthopedics, Ltd., as a controlled expert witness pursuant to Rule 213(f)(3). The defendant asserted that Dr. Anderson was "originally disclosed via email to plaintiff's counsel on 7/15/19." The defendant's disclosure provided that Dr. Anderson "may" review the plaintiff's medical records and deposition transcripts of the parties and medical providers, and offer testimony on his review. The disclosure stated that Dr. Anderson "may" provide testimony as to (1) the plaintiff's injuries caused by the car accident, (2) the medical treatment the plaintiff received, (3) the plaintiff's diagnosis and prognosis, and the causes of same, and (4) the reasonableness and necessity of the plaintiff's medical bills and treatment. The defendant indicated that he "expected" Dr. Anderson to testify regarding "those opinions and conclusions which were provided within his records review report which is currently pending." Finally, the defendant indicated that he "anticipated" Dr. Anderson would testify that he relied on photographs of the damage to the parties' vehicles in reaching his conclusions.

¶ 12    On August 22, 2019, the plaintiff provided his supplemental discovery responses pursuant to Rules 213 and 214 (Ill. S. Ct. R. 213 (eff. Jan. 1, 2018); R. 214 (eff. July 1, 2018)). The plaintiff provided the defendant with the medical records and bills from the plaintiff's August 6, 2019, appointment with Dr. Rutz, at which time Dr. Rutz had diagnosed the plaintiff with a small annular tear and a disc protrusion.

¶ 13    On September 20, 2019, the plaintiff filed his objection to the defendant's motion for extension of time. The plaintiff argued that the defendant's August 19, 2019,

5

disclosure of Dr. Anderson was untimely under the trial court's case management order and failed to meet the requirements of Rule 213(f)(3). Specifically, the plaintiff argued that the defendant's disclosure was insufficient because it did not include Dr. Anderson's conclusions and opinions, the bases for any of Dr. Anderson's conclusions or opinions, Dr. Anderson's qualifications, and Dr. Anderson's report. The plaintiff also argued that the defendant had demonstrated a lack of diligence in disclosing his controlled expert and in obtaining the discovery depositions of the plaintiff's treating physicians. The plaintiff requested an order from the trial court denying the defendant's request for an extension of time, striking the defendant's Rule 213(f)(3) disclosure, and barring Dr. Anderson's opinion testimony at trial.

¶ 14    Also, on September 20, 2019, the defendant sent the plaintiff a supplemental notice of compliance with discovery, attaching Dr. Anderson's expert report and opinions, dated September 17, 2019. On September 23, 2019, the defendant sent a notice of his intent to take Dr. Anderson's video evidence deposition on Thursday, October 17, 2019, at 2 p.m., four days before trial.

¶ 15    On September 30, 2019, the defendant responded to the plaintiff's objection to the defendant's motion for an extension of time, asserting the defense was not able to meet the August 15, 2019, deadline set by the case management order "due to circumstances beyond its control." The defendant argued that despite his diligent efforts, he was unable to obtain the medical records of the plaintiff in a timely manner, which resulted in the delay in obtaining and disclosing the opinion from Dr. Anderson. The defendant also argued he was not able to meet the case management order deadline due to the plaintiff's

6

"surprise" production of the medical records from Dr. Rutz related to the August 6, 2019, treatment date after the August 15, 2019, discovery deadline.

¶ 16 On October 1, 2019, the trial court held a hearing on the defendant's motion for extension of time, a partial transcript of which was included in the record on appeal. At the hearing, the defense requested an extension of the deadline to disclose the opinion of Dr. Anderson and sought leave to take his deposition due to "circumstances beyond our control." The plaintiff requested the court deny the extension, asserting the defendant's Rule 213(f)(3) disclosures were insufficient, and were late due to the defendant's failure to follow up on his requests for medical records. The plaintiff indicated that he had just received the defendant's expert report the previous week and had not yet served his Rule 213 discovery or conducted a records deposition of Dr. Anderson's custodian of records.

¶ 17 On October 9, 2019, the trial court entered an order granting the defendant's motion for an extension of time, permitting the defendant to take the evidence deposition of Dr. Anderson. The court, however, "reserve[d] judgment on the admissibility of Dr. Anderson's deposition, subject to full compliance by defendant and defendant's witness to comply with the 'spirit of discovery.' "

¶ 18 On October 10, 2019, the plaintiff submitted Rule 213(f) supplemental interrogatories and requests for production to the defendant regarding financial information related to medical-legal work performed by Dr. Anderson and his medical practice, Illinois Southwest Orthopedics, Ltd. The plaintiff's supplemental interrogatories requested the following information for the previous five years: (1) the total number of persons examined by Dr. Anderson for the defendant's attorney, law firm, and insurer;

7

(2) the total number of plaintiffs, parties, or persons examined by Dr. Anderson for defendants or insurance companies for worker compensation or civil litigation cases; (3) the total amount of gross expenses or payments paid to Dr. Anderson for medical-legal work, including medical examinations, medical reviews, testimony, diagnostic testing, report writing, or any other medical or consulting services for law firms, insurance companies, employers, and other defendants; (4) the total amount of gross expenses and payments paid for medical examinations, not including treatment, with regard to cases pending with plaintiff firms; and (5) the total income paid to Dr. Anderson by the defendant, defendant's attorneys, and defendant's insurance company for testimony, including income derived from preparation time and for record reviews. The plaintiff's supplemental request for production requested copies of federal form 1099 tax records and other documents associated with income earned for medical-legal work performed by Dr. Anderson and his practice, both in total and for the defendant's law firm and insurers for the last five years.

¶ 19    The following day, the plaintiff served a subpoena *duces tecum* upon Wanda Hartsoe, the custodian of records for Dr. Anderson and Illinois Southwest Orthopedics, Ltd., directing her to appear for a records deposition on Wednesday, October 16, 2019, at 4 p.m., and to produce documents concerning medical-legal services performed by Dr. Anderson and his practice.

¶ 20    On October 11, 2019, the plaintiff filed an emergency motion for an accelerated Rule 213(f)(3) discovery disclosure schedule to allow the plaintiff to conduct his Rule 213 discovery and prepare for cross-examination during the depositions scheduled for

8

October 16 and 17, 2019. The plaintiff requested the court order the defendant to produce all discovery responses in compliance with the plaintiff's interrogatories, requests to produce, and subpoenas on or before Tuesday, October 15, 2019, at 5 p.m. The plaintiff noticed the hearing on his motion for the date of the final pretrial conference, October 15, 2019, at 9 a.m.

¶ 21 On October 14, 2019, the defendant submitted his first supplemental Rule 213 witness disclosures. The defendant's supplemental disclosure was substantially similar to his initial disclosure, except that it added that Dr. Anderson was expected to testify regarding the opinions in Dr. Anderson's record review report dated September 17, 2019, including that the plaintiff may have sustained a lumbar strain as a result of the motor vehicle accident.

¶ 22 On October 15, 2019, the trial court conducted the final pretrial conference and the hearing on the plaintiff's emergency motion. At the hearing, the plaintiff requested an order directing the defendant to comply with the plaintiff's supplemental Rule 213(f) discovery requests by 5 p.m. that day, which was less than 48 hours before the evidence deposition of Dr. Anderson, so that the plaintiff could cross-examine Dr. Anderson regarding his financial interest and bias. The trial court observed that the defendant should have anticipated receiving, and having to respond to, the plaintiff's supplemental Rule 213 discovery regarding Dr. Anderson's medical-legal practice after the defendant disclosed Dr. Anderson's report on September 20, 2019. The trial court addressed defense counsel as follows:

9

"THE COURT: All right. So we've had since the 21st of September really to provide this info or to have some idea and definitely since the [hearing on the] 1st of October. I made it pretty clear that that was info I was expecting. Are you intending to produce that by 5:00 today?

[Defense Counsel]: We've been working on that. We're getting everything together—

THE COURT: So I'm going to grant their motion. All right?

[Defense Counsel]: Okay.

* * *

THE COURT: So let me just say for the record because, you know, my order was perfunctory. I got busy. This is an auto case. It was discovery issues and really in the Court's perspective I shouldn't have to deal with the week or two weeks before the trial date so I'm relying upon my oral record here. You know, I basically said in the spirit of discovery as we've had this discussion in terms of Dr. Anderson and we've—while I didn't enumerate those things within that order it's my expectation that frankly I let you up, you know, I'm letting the defendant do this deposition late pursuant to the case management order.

So I'm expecting that you need to balance that for the plaintiff so that they're not prejudiced by my allowance of you to take the deposition of Dr. Anderson. So I just want my record to be clear as to why these things are proceeding in the manner that they are.

Frankly, I looked at this and I balanced the various hardships and prejudices of the parties. I think I've made it clear that in the event that I don't feel that you make an appropriate tendering of information that the plaintiff needs for the deposition of Dr. Anderson, I'll take up the admissibility of Dr. Anderson's deposition. This is an evidence deposition. It's the Court's position that I can allow this to go forward at this particular point in time without prejudicing either party. I'm still intending to balance the equities, so to speak, depending on what occurs. Just so I'm clear I don't want it to be—and obviously while we've had this discussion my order doesn't necessarily say that but I knew everybody wanted me to get an order out right away as they should have but we had some other things that were going on. So my order isn't as detailed as I would have liked it to be.

So is everybody clear on the record as to what I intend for them to do?

[Defense Counsel]: Thank you, Judge. Yes."

10

¶ 23    Shortly before the 5 p.m. deadline, defense counsel submitted the defendant's responses to the plaintiff's supplemental discovery. The defendant objected to almost all of the plaintiff's supplemental interrogatories and requests for production as being ambiguous, unduly burdensome, overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to discoverable materials, or tailored to harass the defense and delay the litigation process. The defendant provided some information in response to the plaintiff's discovery requests, which included copies of checks sent to Dr. Anderson for work performed in this case, as well as a two charts, titled "IME List" and "Deposition Analysis," purporting to detail Dr. Anderson's medical-legal work for the previous five years.

¶ 24    The next morning, plaintiff's counsel emailed defense counsel, advising them that plaintiff's counsel believed the defendant's production was deficient, requesting specific documents, including 1099 forms, and indicating that plaintiff's counsel was electing to proceed with the deposition of Hartsoe. That day, in the hours before Hartsoe's deposition was to commence, defense counsel emailed plaintiff's counsel an additional 200 pages of discovery responses, including one 1099 form from the defendant's law firm to Illinois Southwest Orthopedics for the year 2018 and copies of various checks paid to Dr. Anderson and Illinois Southwest Orthopedics by the defendant's law firm over the last several years.

¶ 25    The deposition of Hartsoe was conducted later that afternoon. Hartsoe acknowledged receiving the subpoena *duces tecum* and the notice of records' deposition on October 11, 2019, five days earlier. In response to the subpoena, Hartsoe had mailed

11

plaintiff's counsel copies of Dr. Anderson's report, the plaintiff's medical records provided to Dr. Anderson, and the IME List and Deposition Analysis. During the deposition, Hartsoe testified the IME List and Deposition Analysis constituted complete lists of all the independent medical examinations (IMEs) and depositions Dr. Anderson had performed since 2013. Hartsoe testified that Dr. Anderson also performs record reviews, which are medical-legal services, but that she does not keep a running list of these activities and they were not included on the IME List. Hartsoe stated record reviews are kept on a legal sheet for billing purposes and that she could have compiled a list of them, but that she did not do so in response to the subpoena. Hartsoe also testified that the Deposition Analysis did not include any fees Dr. Anderson received for depositions that had been canceled or rescheduled, or any additional fees received for depositions that exceed an hour in length.

¶ 26    Hartsoe stated that she logs the payments Dr. Anderson receives for IMEs, depositions, and record reviews on an Excel spreadsheet and makes copies of the checks before forwarding the checks to the central business office at Illinois Southwest Orthopedics. These spreadsheets would include payments for canceled or rescheduled depositions, and deposition overages. Hartsoe stated that all of the appointments and records for medical-legal services provided by Dr. Anderson are kept on Athena, a computer program.

¶ 27    Hartsoe acknowledged that the documents she provided in response to the subpoena did not account for all the income Dr. Anderson earns for providing medical-legal services. Hartsoe testified that the documents she provided did not include

information compiled by her predecessor, or income with regard to medical record reviews, IME addendums, cancelation fees, no-show fees, and overage time for depositions, even though those are all medical-legal services. Hartsoe also acknowledged that she did not produce copies of the checks received by Dr. Anderson for his medical-legal work or the electronic records from Excel or Athena logging Dr. Anderson's activities and income from all of his medical-legal work, despite her ability to do so and request in the subpoena directing her to produce checks and electronic records. Hartsoe testified she did not contact the central business office at Illinois Southwest Orthopedics to determine if it could provide documents in compliance with the subpoena.

¶ 28 During the deposition, plaintiff's counsel presented Hartsoe with numerous documents, including checks issued by the defendant's law firm to Dr. Anderson and Illinois Southwest Orthopedics for record reviews, depositions, deposition overages, IME cancelations or no-shows, and an IME addendum. Hartsoe conceded that these charges for medical-legal work were not contained on either the IME List or the Deposition Analysis.

¶ 29 On Thursday, October 17, 2019, the video evidence deposition of Dr. Anderson was taken. Dr. Anderson testified he had performed a number of medical record reviews at the request of the defendant's law firm, but that he did not know how many. Dr. Anderson indicated that he was aware of the federal and state rules to produce financial information related to his medical-legal work when he was retained as an expert, and that he has been aware of this requirement for several years. Dr. Anderson stated that Hartsoe was responsible for maintaining a list demonstrating Dr. Anderson's medical-legal work.

13

¶ 30 Although Dr. Anderson initially testified that his income for medical record reviews was included in the IME List that was produced to the plaintiff, Dr. Anderson eventually acknowledged that this information was not provided to the plaintiff. During cross-examination, Dr. Anderson testified as follows:

"Q. Okay. Now, records reviews are not included on that list. Is that true?

A. No. Records reviews are in there.

Q. They are?

A. As far as I know.

Q. Well, we actually took Wanda's deposition last night and she confirmed for us that records reviews would not be listed in that document.

A. I thought they would be.

\*\*\*

A. Then I don't know. I thought they were included. I thought everything was included in there.

Q. Okay. Have you directed her to keep records reviews and independent medical examinations in that document?

A. I thought they were all included in there. Any work I did I thought was included there. So this is new to me as of today.

Q. Okay. What will you plan to do after learning this today?

A. I am going to fix it. I think it is already being fixed. Apparently you guys did a deposition last night with Wanda which you brought up, too, and so I called the practice manager when I found out what happened; and apparently not all of the information was there and I don't know why. So they are reviewing it right now. They have apparently a central billing office and they are reviewing it and putting together a new list. I thought it was all in there, but apparently I was wrong.

Q. So was yesterday the first time that you found out that that information was not included?

A. Today."

¶ 31    Dr. Anderson also acknowledged that the Deposition Analysis was "not totally complete" in that it did not include all the depositions he gave or the overage charges for depositions. Dr. Anderson stated that he believed that this information should have been included on the Deposition Analysis. Dr. Anderson also testified that the Deposition Analysis provided by his office indicated that he gave 33 depositions for cases with the defendant's law firm, while the firm only disclosed 31 depositions to plaintiff's counsel. Dr. Anderson testified that, to his knowledge, no one from the defendant's law firm had contacted him or his office to obtain any of the information requested in the plaintiff's discovery requests.

¶ 32    On Monday, October 21, 2019, the day of trial, the plaintiff filed an emergency motion to bar the testimony of Dr. Anderson based on the defendant's failure to comply with the plaintiff's discovery requests, the subpoena *duces tecum*, and the trial court's October 9, 2019, and October 15, 2019, orders. After reviewing the depositions of Hartsoe and Dr. Anderson, the trial court conducted a hearing on the plaintiff's emergency motion. The plaintiff argued to the court that it should bar Dr. Anderson's testimony because the defendant failed to produce the necessary financial information related Dr. Anderson's medical-legal work, despite two court orders compelling him to do so.

¶ 33    Defense counsel acknowledged at the hearing that their firm had retained Dr. Anderson as an expert in over 30 other cases. The defendant argued that the court should not bar Dr. Anderson's testimony because (1) the law firm had provided the plaintiff with the checks the firm had paid to Dr. Anderson; (2) Hartsoe was unable to comply with the subpoena because she received it only five days before her deposition; (3) Hartsoe made a good-faith effort to comply with the subpoena; (4) Dr. Anderson substantially complied with the discovery requests, and any noncompliance was too insignificant to justify barring his testimony; and (5) the defendant's disclosure of Dr. Anderson was late, and the related Rule 213 supplemental discovery regarding Dr. Anderson's medical-legal work was conducted shortly before trial, due to the plaintiff's August 22, 2019, supplemental disclosure of medical records from treatment the plaintiff received on August 6, 2019.

¶ 34    The trial court rejected each of the defendant's arguments and granted the plaintiff's motion to bar Dr. Anderson's testimony. The court concluded that the records and information provided by Dr. Anderson were incomplete and that he did not make a good-faith effort to comply with the plaintiff's discovery requests for information regarding his income from medical-legal work. The court found that Dr. Anderson was regularly engaged in medical-legal work, so he was familiar with the production requirements and that the information being sought by the plaintiff should have been readily available. The court held that the defendant's failure to comply with discovery prejudiced the plaintiff's ability to meaningfully cross-examine Dr. Anderson on the issue of his potential pecuniary interest. The court rejected the defendant's contention that he

16

was not given sufficient time to comply with the plaintiff's discovery requests, finding that at the hearing on October 1, 2019, the court had made it clear that this information was to be disclosed.

¶ 35    The cause proceeded to trial later that day. The plaintiff testified that on February 22, 2018, around 3 p.m., he was driving on I-64 and had just crossed the Stan Musial Bridge when traffic stopped. The plaintiff was at a complete stop when he looked in his rearview mirror and saw the defendant's car "whip" around and come toward the plaintiff. The plaintiff grabbed the wheel and put his foot on the brake, bracing for the impending impact. The plaintiff testified there was a pop, and he was pushed up and forward, which twisted his body and forced his foot from the brake.

¶ 36    The police responded to the scene shortly after the accident. At that time, the plaintiff advised the police that he was not injured, and he refused an ambulance. The plaintiff testified that, approximately 30 to 40 minutes after the accident, he began feeling pain in his lower back, so he sought treatment in the emergency room at Belleville Memorial Hospital. The hospital staff performed an x-ray of the plaintiff's back and gave him ibuprofen and a prescription for muscle relaxers. The plaintiff followed up with Dr. Morrison on February 26, 2018, four days after the accident. Dr. Morrison examined the plaintiff and diagnosed him with muscle strain and a low back sprain as a result of the accident. Dr. Morrison prescribed the plaintiff steroids, which the plaintiff took with over-the-counter pain medication.

¶ 37    The plaintiff testified he continued to experience pain in his neck and low back. When his pain did not subside, the plaintiff sought treatment from Dr. Fast, a

chiropractor. The plaintiff testified that Dr. Fast performed a variety of treatments for the plaintiff's neck and back pain, and that these treatments alleviated almost all the issues the plaintiff was experiencing with his neck. The plaintiff testified that while his neck occasionally feels "stiff," it was no longer painful. The plaintiff continued to experience low back pain, so Dr. Fast recommended that the plaintiff seek treatment from Dr. Rutz, an orthopedic surgeon specializing in spinal surgery.

¶ 38   On April 24, 2018, the plaintiff was seen by Loren Vandergriff, a nurse practitioner with Dr. Rutz's practice, who performed a physical examination. During his initial visit, Vandergriff advised the plaintiff to "try to live with" the pain in his left lumbar region for a while to see if his condition would resolve itself with time. Vandergriff recommended that the plaintiff continue conservative care, including treatments with Dr. Fast, engaging in physical therapy, and taking anti-inflammatories. Vandergriff advised the plaintiff to contact Dr. Rutz's office if his pain did not subside.

¶ 39   Although the plaintiff's condition had improved some, he testified that he continued to experience pain in his back. On April 17, 2019, approximately 13 months after the accident, the plaintiff returned to Dr. Rutz's office and received an MRI of his lumbar spine. On August 6, 2019, Dr. Rutz met with the plaintiff to discuss the results of the MRI.

¶ 40   Dr. Rutz testified that the plaintiff's MRI did not reveal any specific degenerative changes but did show a small disc protrusion at the L4-5 level with a small tear in the back of the disc. Dr. Rutz testified that to a reasonable degree of medical certainty, the plaintiff's lower back pain was the result of an annular tear in the L4-5 disc. Dr. Rutz

18

stated this injury can be caused by a motor vehicle accident. Dr. Rutz testified that as a result of the injury, the plaintiff would be a potential candidate for spinal fusion surgery at some point in the future. The surgery would require the plaintiff to be off work for four to six months and would cost between $100,000 and $120,000. Dr. Rutz testified that he did not believe that the plaintiff's symptoms were severe enough to warrant surgical intervention, and that he did not recommend the surgery to the plaintiff so long as he was able to function reasonably well. Dr. Rutz believed it was unlikely that the plaintiff's condition would spontaneously improve, and Dr. Rutz recommended the plaintiff try to live with his condition for as long as possible. Dr. Rutz testified the plaintiff's condition would have caused pain and suffering, and that it would likely continue to cause pain and suffering in the future. Dr. Rutz stated that the plaintiff's injury could potentially impact his ability to enjoy life and his daily functioning.

¶ 41   The plaintiff testified he is a maintenance engineer and the overnight shift manager at River City Casino. The plaintiff is responsible for the care and upkeep of the facilities, including electrical, plumbing, heating, cooling, and general repairs. The plaintiff's job requires a significant amount of physical activity, such as lifting, bending, squatting, climbing, and operating heavy machinery and tools. The plaintiff missed two days of work following the accident, resulting in $521.60 in lost wages. The plaintiff was on light duty at work following the accident and required extra assistance from his coworkers. The plaintiff testified that the physical demands of his job continue to exacerbate his pain. The plaintiff is concerned about losing his job because he has to push through the pain, which slows down his work performance.

¶ 42    The plaintiff testified that the pain in his lower back has been persistent since the automobile accident. The plaintiff continues to take over-the-counter pain medication daily, and he uses physical therapy, heat, cold, and rest to alleviate the pain. The plaintiff stated the pain from his injury and his concern about aggravating his injury have limited his activities. The plaintiff testified he requires more help around the house, and he can no longer do all the things he used to do. The plaintiff had no injuries or issues with his neck or back prior to the motor vehicle accident. The plaintiff stated he does not want to have surgery, but that he will consider his options if his symptoms persist.

¶ 43    The plaintiff asked the jury to award him $8989 for past medical expenses; $120,000 for future medical bills for surgery; $30,000 for pain and suffering; $60,000 for future pain and suffering; $30,000 for loss of normal life; $60,000 for loss of future normal life; $521.60 in lost earnings; and $33,904 for six months of future lost earning to recover from surgery, for a total of approximately $343,000 in damages. The defendant admitted liability for the motor vehicle accident, and only disputed the extent of the plaintiff's injuries. The defendant asked the jury to limit the plaintiff's award to $12,000.

¶ 44    The jury returned a verdict in favor the plaintiff and against the defendant in the amount of $129,510.60. The jury awarded the plaintiff $8989 in reasonable medical expenses; $521.60 in lost earnings; and $30,000 each for past pain and suffering, future pain and suffering, loss of normal life experienced, and loss of normal life to be experienced in the future. The jury did not award the plaintiff any damages for future medical expenses or for future lost earnings.

¶ 45    On November 20, 2019, the defendant filed a motion for new trial. The defendant argued that the trial court abused its discretion in barring Dr. Anderson's testimony because Dr. Anderson complied with the plaintiff's discovery requests in good faith, the plaintiff failed to request a motion to compel, and the plaintiff's discovery requests were overly broad, unduly burdensome, tailored to harass, and beyond the scope outlined in *Trower v. Jones*, 121 Ill. 2d 211 (1988). The defendant also asserted that the jury's verdict was against the manifest weight of the evidence.

¶ 46    On December 10, 2019, the trial court held a hearing on the defendant's motion for new trial. At the hearing, defense counsel insisted that none of the discovery delays in the case were attributable to the defense because it was "unable" to obtain the plaintiff's medical records and was therefore not able to timely retain and depose Dr. Anderson within the deadlines set by the case management order. Instead, the defense insisted that the delays were due to the plaintiff's violation of the case management order. The defendant argued the plaintiff delayed discovery by (1) failing to send his supplemental Rule 213(f) discovery after the defense advised plaintiff's counsel via email in July that the defendant intended to retain Dr. Anderson as his expert and (2) hampering the defendant's ability to secure a record review by producing additional medical records "at the last minute." The defendant also argued that the plaintiff's discovery requests "bordered on the obscene," and that the court erred in sanctioning the defendant absent the plaintiff filing a motion to compel discovery, a ruling by the court as to the defendant's written objections to the plaintiff's discovery requests, and a court order specifying the discovery to be produced.

21

¶ 47 The plaintiff reiterated that the court had advised the defendant at the hearing on October 1, 2019, of the court's expectation that the defendant would produce the financial information related to Dr. Anderson's medical-legal work. The plaintiff argued that despite the trial court's admonishment, the plaintiff filed his motion for accelerated discovery after filing his supplemental Rule 213(f) discovery to ensure that it was clear to the defendant what the plaintiff was seeking and what was expected of Dr. Anderson and defendant's production. The plaintiff observed that the defendant did not object to the scope of the plaintiff's discovery requests at the October 15, 2019, hearing on the plaintiff's motion for accelerated discovery. The plaintiff also argued that the deposition testimony indicated that the defendant did not consult with Dr. Anderson's office to ensure compliance with the plaintiff's discovery requests.

¶ 48 The trial court entered an order denying the defendant's motion for new trial, rejecting the defendant's arguments. The court found that the discovery delays were attributable to the defendant. Despite finding that the defendant was responsible for the delays in discovery, the court acknowledged that it had granted the defendant's motion for extension of time, and permitted the defendant to submit his expert, provided the defendant produced the financial information the plaintiff needed to effectively cross-examine Dr. Anderson on his potential financial bias. The court found that the defendant came up short on his obligations and failed to provide the plaintiff with "even the minimum that [he was] requesting." The court held that the plaintiff's discovery requests were reasonable, and that Dr. Anderson did not act in good faith and failed to provide the

basic information required so that the plaintiff could test Dr. Anderson's credibility. This appeal follows.

¶ 49                                    ANALYSIS

¶ 50                              Discovery Sanction

¶ 51    On appeal, the defendant argues that he is entitled to a new trial because the trial court erroneously granted the plaintiff's emergency motion and barred the testimony of Dr. Anderson as a sanction for failing to comply with the plaintiff's discovery requests. Discovery in civil actions is governed by an orderly and comprehensive set of procedures. *Custer v. Cerro Flow Products, Inc.*, 2019 IL App (5th) 190285, ¶ 25. The rules of discovery establish guidelines for a fair and orderly procedure whereby discovery and full disclosure may be accomplished. *Harris v. Harris*, 196 Ill. App. 3d 815, 819 (1990).

¶ 52    Illinois Supreme Court Rule 218 allows the trial court wide latitude to manage cases on its docket, after considering a variety of factors set forth in the rule. See Ill. S. Ct. R. 218 (eff. July 1, 2014). After considering the issues raised by each unique case, the court is directed to enter an order that "controls the subsequent course of the action unless modified." Ill. S. Ct. R. 218 (eff. July 1, 2014). Rule 218(c) specifically states:

> "All dates set for the disclosure of witnesses, including rebuttal witnesses, and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates that trial will commence, unless otherwise agreed to by the parties." Ill. S. Ct. R. 218(c) (eff. July 1, 2014).

¶ 53    According to the committee comments, "[a] separate road map will chart the course of each case from a point within six months from the date on which the complaint is filed until it is tried." Ill. S. Ct. R. 218, Committee Comments (rev. June 1, 1995). The goal of the rule is to "prevent the potential for discovery abuse and delay which might otherwise result." Ill. S. Ct. R. 218, Committee Comments (rev. June 1, 1995). Simply put, the purpose behind Illinois Supreme Court Rule 218 is to allow all parties a full and fair opportunity to litigate their case, and prevent the very kind of "last minute," frantic pleadings seen in this case.

¶ 54    Our supreme court has held that its rules are ineffective unless trial courts do not countenance violations and unhesitatingly enforce discovery provisions. *Buehler v. Whalen*, 70 Ill. 2d 51, 67 (1977). This court has also cautioned that "[d]iscovery is not a tactical game but rather a procedural tool for the ascertainment of truth for the purposes of promoting either a fair trial or a fair settlement." *Simpkins v. HSHS Medical Group, Inc.*, 2017 IL App (5th) 160478, ¶ 34.

¶ 55    Illinois Supreme Court Rule 219(c) authorizes the trial court to impose just sanctions, including barring a witness from testifying, upon any party who unreasonably fails to comply with the discovery rules or any court order entered pursuant to the those rules. Ill. S. Ct. R. 219(c) (eff. July 1, 2002); *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). Unreasonable noncompliance with a discovery rule is defined as a deliberate and pronounced disregard for the rule. *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App. 3d 636, 641 (1994). Unreasonable

24

noncompliance is determined, in part, by the importance of the information that has not been produced. *Shelbyville Mutual Insurance Co.*, 262 Ill. App. 3d at 641.

¶ 56    "A just order of sanctions under Rule 219(c) is one which, to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky*, 181 Ill. 2d at 123. The purpose of imposing a sanction is to coerce compliance with discovery rules, not to punish the noncompliant party. *Shimanovsky*, 181 Ill. 2d at 123. There are several factors that a trial court is to consider in determining what sanction, if any, to impose: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the evidence; and (6) the good faith of the party offering the testimony. *Shimanovsky*, 181 Ill. 2d at 124. No single factor is determinative, and the court is to consider these factors in light of the unique factual situation that the case presents. *Shimanovsky*, 181 Ill. 2d at 127. The determination of whether to impose sanctions pursuant to Rule 219(c) and, if so, the type of sanction is within the broad discretion of the trial court. *Shimanovsky*, 181 Ill. 2d at 120. Absent an abuse of that discretion, this court will affirm the trial court's determination. *Shimanovsky*, 181 Ill. 2d at 120.

¶ 57    While the defendant acknowledges the six factors to be utilized in assessing a trial court's discovery sanction, he does not analyze them on appeal. Instead, the defendant argues the trial court erred in barring Dr. Anderson's testimony because (1) the defendant was diligent in obtaining and disclosing Dr. Anderson as a retained expert; (2) the plaintiff's discovery requests were overly broad, unduly burdensome, tailored to harass,

and beyond the scope outlined in *Trower*, 121 Ill. 2d 211; (3) the plaintiff failed to request a Rule 201(k) conference (see Ill. S. Ct. R. 201(k) (eff. July 1, 2014)) to settle the parties' discovery dispute, failed to file a motion to compel the defendant's compliance with discovery, and failed to submit additional supplemental discovery after Dr. Anderson's evidence deposition; (4) Dr. Anderson responded to the plaintiff's discovery requests in good faith; and (5) the plaintiff failed to establish he was prejudiced by the defendant's noncompliance. To the extent possible, this court acknowledges the defendant's arguments on appeal, and has made every effort to discuss the defendant's claims in the context of the applicable *Shimanovsky* factors. As more fully set forth herein, after considering the defendant's arguments, the applicable *Shimanovsky* factors, and the record on appeal, we find the factors weigh in favor of the plaintiff, and support the trial court's decision to bar Dr. Anderson's testimony at trial.

¶ 58   We begin our analysis with the first *Shimanovsky* factor, the surprise to the adverse party. We find this factor weighs in favor of the plaintiff. Illinois Supreme Court Rule 213(f)(3) is very specific with regard to the kind of information that must be disclosed for a "controlled expert." Once plaintiff propounded an interrogatory under the rule, the defendant was required to disclose the subject matter on which Dr. Anderson would testify, Dr. Anderson's conclusions and opinions and the bases for those opinions, Dr. Anderson's qualifications, and Dr. Anderson's report, if one was tendered by the defendant. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018).

¶ 59 Pursuant to the case management order, the deadline for the defendant to disclose his Rule 213 retained expert witness[1] and opinions was July 15, 2019. The defendant missed this deadline. On the date of the deadline, defense counsel emailed plaintiff's counsel to advise them that the defendant was not going to meet the deadline. Defense counsel contends that the email dated July 15, 2019, stating they would "probably proceed with having a records review completed by Dr. Anderson" was sufficient to meet the disclosure requirements of Rule 213(f). Defense counsel's claim that this email can somehow meet the strict requirements of Rule 213(f)(3) is disingenuous. The defendant's purported "disclosure" fails to provide any of the information required by the rule, except to name the controlled expert. Defendant's failure to comply is best illustrated through his counsel's own words, where he states: "Once we have his [Dr. Anderson's] opinions we will pass them on to you." Other than disclosing the name of Dr. Anderson, the email did not provide the plaintiff with any information, as contemplated by Illinois Supreme Court Rule 213(f)(3).

¶ 60 Defendant also claims that his "Rule 213 Disclosures," sent to plaintiff on April 19, 2019, were adequate. Again, the defendant misconstrues the nature of the rule. The defendant's disclosure offered no specific conclusions, and there was not one opinion proffered. Instead, the disclosure indicated what Dr. Anderson "may" do in reviewing medical records, what he "may" do in reviewing images of plaintiff's treatment, and what

---

[1]The retained expert witness is, by definition, a controlled expert witness under the rule. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018).

27

he "may" do with regard to his review of depositions and medical bills. These answers were vague, not made in good faith, and failed to comply with Rule 213(f)(3).

¶ 61 On October 9, 2019, over six weeks after discovery was to be closed, the circuit court granted the defendant's motion for extension of time and ruled that Dr. Anderson's evidence deposition could proceed. Plaintiff's counsel served supplemental Rule 213 discovery requests on October 10, 2019. Two days later, on October 11, 2019, the plaintiff filed his emergency motion for an accelerated Rule 213(f)(3) discovery schedule, in which the plaintiff requested an order directing the defendant to produce all discovery responses related to Dr. Anderson's medical-legal work by October 15, 2019, at 5 p.m. to ensure that the plaintiff had adequate time to prepare for Dr. Anderson's deposition on October 17, 2019.[2]

¶ 62 The trial court conducted a hearing on the plaintiff's emergency motion on the morning of October 15, 2019. At no point prior to, or during the hearing, did the defendant raise any objections to the plaintiff's supplemental 213 discovery requests. Instead, defense counsel advised the court that they were in the process of compiling the requested information. When the court indicated it was going to grant the plaintiff's motion, defense counsel responded, "Okay." When the court elaborated on its reasoning for granting the motion, defense counsel confirmed for the court that the defense understood what the court expected them to do.

---

[2]Had the defendant followed the September 17, 2018, case management order, this kind of emergency motion would not have been necessary. Pursuant to Rule 213(d), the defendant would have had 28 days after service to respond to these interrogatories. Ill. S. Ct. R. 213(d) (eff. Jan. 1, 2018).

¶ 63 Subsequent to the trial court's rulings, the parties engaged in what can only be described as "last minute, disorganized" pretrial discovery of information pertaining to Dr. Anderson's medical-legal work. As evidenced by the depositions of Dr. Anderson and Hartsoe, plaintiff's counsel was surprised when testimony revealed that the information requested in the subpoena and supplemental request for production had not been produced. Rather than argue the issue of surprise, the defendant now asks this court to look at the scope of the plaintiff's 213(f)(3) requests.

¶ 64 The defendant did not raise this issue as to the scope of the plaintiff's discovery requests until he filed his motion for new trial, despite the fact that he had several opportunities to argue before trial that the plaintiff was not entitled to the supplemental discovery being sought related to Dr. Anderson. Specifically, at the hearing on October 15, the defendant simply indicated he was working on gathering the requested materials. Additionally, at the hearing on October 21, when plaintiff filed his emergency motion to bar Dr. Anderson, defense counsel failed to voice any objections regarding the scope of the discovery being sought regarding Dr. Anderson's medical-legal work. Only after the trial was completed did the defendant complain regarding the scope of the discovery being sought or its alleged burdensome nature. Considering the failure of defendant to produce the documents requested regarding Dr. Anderson's financial records for his medical-legal work, we find the first factor, surprise, favors the plaintiff.

¶ 65 The second and third factors, the prejudicial effect of the proffered evidence and the nature of the evidence, also weigh in favor of the plaintiff. We have already outlined, in great detail, the late disclosure of Dr. Anderson, and the fact that it was the defendant

who set the video-evidence deposition of the doctor simultaneously with the expert witness disclosure of the doctor. This late disclosure, on the eve of trial, did not afford the plaintiff with a measured opportunity to obtain the financial records and avoid surprise, as contemplated by the case management order and the Illinois Supreme Court rules. Defendant's lack of diligence in following the case management order led to a flurry of last-minute gamesmanship by the defendant and denied the plaintiff a fair opportunity to obtain information regarding Dr. Anderson's income from his medical-legal work, which, potentially, affected the credibility of the witness.

¶ 66 Generally, a party is permitted to show possible bias with evidence that the proponent of an expert paid for his testimony. *Shaheen v. Advantage Moving & Storage, Inc.*, 369 Ill. App. 3d 535, 543-44 (2006). Similarly, a party is permitted to elicit evidence as to the amount of income an expert earns from testifying, that the expert usually testifies for one side, and that the expert testified for the same attorney in other cases. *Shaheen*, 369 Ill. App. 3d at 543-44 (citing to *Trower*, 121 Ill. 2d at 217-19). This information is vital to enabling a party to effectively cross-examine an expert on his potential bias, partisanship, or financial interest. *Trower*, 121 Ill. 2d at 217.

¶ 67 On appeal, the defendant argues that the plaintiff failed to establish prejudice because he received sufficient information regarding Dr. Anderson's medical-legal work to effectively cross-examine Dr. Anderson on his financial interest and bias. Specifically, the defendant argues that during Hartsoe's deposition, the plaintiff demonstrated only a 5% discrepancy between the medical-legal fees that Dr. Anderson's office reported on

30

the IME List and Deposition Analysis and that reported by the defendant's law firm. We disagree.

¶ 68 First, the defendant's argument fails to recognize that the plaintiff was only able to cross-examine Hartsoe on omissions in the information submitted by Dr. Anderson's office based on checks and information produced by the defendant's law firm. In effect, this means that the plaintiff uncovered a 5% income discrepancy in the medical-legal work that Dr. Anderson performed at the direction of the defendant's law firm. It is entirely unknown how much unreported income Dr. Anderson earned in medical-legal work with other law firms and insurers.

¶ 69 The breadth of the financial information omitted from the defendant's disclosure was potentially vast. The information produced did not include fees for deposition "overages" and cancellation fees. More importantly, the data did not include funds earned for all medical record reviews performed by Dr. Anderson, which was the precise service provided in this case. While the defendant argues that the plaintiff did not attempt to impeach Dr. Anderson during the deposition about the missing information on his earnings from medical-legal work, the record demonstrates that Dr. Anderson indicated that he did not know how many times he had been retained by the defendant's law firm because this information is compiled by Hartsoe. Furthermore, Dr. Anderson is a frequent medical witness and, during the deposition, recognized that he had an obligation to produce his financial information to the plaintiff, and that his production was deficient.

¶ 70 Throughout the proceedings, the trial court emphasized that it was allowing the defendant to disclose the identity and opinions of his medical expert in an untimely

31

manner only upon the condition that the plaintiff's discovery requests were fully answered. The court was clear that disclosure of financial information regarding Dr. Anderson's medical-legal work was vital to the plaintiff's ability to effectively cross-examine Dr. Anderson on his financial interest and bias. The trial court's finding that the defendant's failure to comply with the plaintiff's discovery requests prejudiced the plaintiff by significantly inhibiting his ability to effectively cross-examine the defendant's retained expert is supported by the record. Therefore, considering the nature of the evidence and the prejudicial effect of the plaintiff's inability to effectively cross-examine Dr. Anderson on his financial interest and bias, we find that the second and third factors favor the plaintiff.

¶ 71    The fourth and fifth factors, the diligence of the adverse party in seeking discovery and the timeliness of the adverse party's objection to the evidence, weigh slightly in favor of the plaintiff. Plaintiff's counsel could, and probably should, have begun a discussion pursuant to our supreme court rules in order to avoid the last-minute flurry of discovery. See Ill. S. Ct. R. 201(k) (eff. July 1, 2014) (requiring the parties to make reasonable attempts to resolve their differences over discovery). Although hindsight suggests that the plaintiff may have avoided the depositions and hearings on the eve of trial by filing a motion to compel, the record does not indicate what efforts were made by the parties to cooperate in the enforcement of Illinois Supreme Court Rule 213(f) prior to October 1, 2019. The defendant is equally at fault in that he did not make a good-faith attempt at disclosing the opinions of Dr. Anderson in July 2019, when the case management order required that he do so. The defendant, like the plaintiff, could have filed a motion for a

continuance, but failed to do so. Had the trial court granted the motion for extension of time, the trial date could then have been continued to allow the parties sufficient time to conduct discovery. The lack of diligence, however, by both parties, placed the trial court in a situation where it would have been justified in denying the defendant's motion for extension of time.

¶ 72 Once the trial court extended the deadlines, however, and indicated it would allow the testimony of Dr. Anderson, the plaintiff then filed supplemental interrogatories and issued a subpoena for records. Plaintiff's counsel should have issued these interrogatories in July 2019, when he knew the name of defendant's expert. Had plaintiff done so, the emergency motion to expedite the discovery would have been unnecessary. Nevertheless, the plaintiff determined during the depositions of Hartsoe and Dr. Anderson that defendant's counsel had been lax in obtaining the production requested by the plaintiff. Once the lack of information became apparent, the plaintiff did not delay in filing his motion to bar Dr. Anderson's testimony.

¶ 73 With regard to these two factors, the defendant argues that the plaintiff violated the case management order by failing to timely serve his Rule 213(f) interrogatories on the defendant by April 15, 2019. The defendant also asserts the plaintiff was not diligent in seeking discovery because he waited until October 10, 2019, 11 days before the scheduled jury trial, to submit his supplemental Rule 213(f) interrogatories and requests for production. The defendant argues this action by the plaintiff caused delay in the orderly process of the proceedings because the defendant disclosed his expert to the plaintiff via email on July 15, 2019.

¶ 74   As already noted, Illinois Supreme Court Rule 213(f)(3) requires a party, upon written interrogatory, to disclose a retained expert witness's opinions and the bases for those opinions. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018); see *Keating v. Dominick's Finer Foods, Inc.*, 224 Ill. App. 3d 981, 985 (1992). As a "controlled expert witness," the defendant was required to disclose to the plaintiff the subject matter on which Dr. Anderson would testify, Dr. Anderson's opinions and the bases for those opinions, Dr. Anderson's qualifications, and Dr. Anderson's report. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018).

¶ 75   We begin with the case management order, dated September 17, 2018. The defendant was under an obligation to respond to the plaintiff's 213(f) interrogatories by July 15, 2019, and make his retained expert available for a deposition by August 15, 2019. Other than provide the name of Dr. Anderson, the defendant failed to provide any opinions from Dr. Anderson until September 20, 2019, approximately 30 days before trial, when a report was provided to plaintiff's counsel. At oral argument, plaintiff's counsel asserted that the plaintiff's initial, general interrogatories were submitted to the defendant in August 2018, and included a request for the defendant's witnesses under Rule 213(f). Defense counsel acknowledged during oral argument that the plaintiff's initial interrogatories did contain at least one Rule 213(f) request. These documents are not contained in the record on appeal, so this court is unable to independently confirm the veracity of these representations. It is clear from the record, however, that the plaintiff submitted his supplemental Rule 213(f) interrogatories in October 2019, after the court granted the defendant's motion for extension of time and allowed Dr. Anderson's

deposition to proceed. In light of the parties' representations at oral argument and the lack of any evidence to the contrary in the record, however, we find the defendant's assertion on appeal that the plaintiff violated the case management order by failing serve *any* Rule 213(f) interrogatories on the defendant by April 15, 2019, to be unsupported by the record.

¶ 76    We also reject the defendant's assertion that the plaintiff was not diligent in seeking discovery because the plaintiff did not file his supplemental Rule 213(f) discovery regarding Dr. Anderson's financial information until October 11, 2019, instead of after the defendant's July 15, 2019, "disclosure" of Dr. Anderson as his expert. As already discussed, the defendant's July 15, 2019, email advising the plaintiff that the defendant would "probably" retain Dr. Anderson to perform a record review was insufficient as a Rule 213(f)(3) disclosure. The defendant violated the case management order by failing to disclose the identity, opinions, and report of his Rule 213 retained expert witness by July 15, 2019. The defendant did not provide the plaintiff with his Rule 213 disclosure naming Dr. Anderson as a retained expert until August 19, 2019, four days after the deadline for all discovery to be completed. Notably, this disclosure was also insufficient as it failed to provide Dr. Anderson's opinions and the bases for those opinions, Dr. Anderson's qualifications, and Dr. Anderson's report, as required by Rule 213(f)(3). See Ill. S. Ct. R. 213(f)(3). As previously noted, it would have been prudent for the plaintiff to try to resolve this dispute pursuant to Illinois Supreme Court Rule 201(k). Failure to resolve the issue would have alerted the trial court earlier of the dispute. The defendant, however, did not provide the plaintiff with his supplemental Rule 213

35

disclosure and a copy of Dr. Anderson's report until September 20, 2019. At that time, the defendant's August 15, 2019, motion for extension of time, seeking to extend the discovery deadlines, was still pending. Again, the trial court could have denied the defendant's motion, avoiding the last-minute discovery problems that arose.

¶ 77 But on October 9, 2019, the trial court entered its order granting the defendant's motion for an extension of time, allowing the defendant to take the evidence deposition of Dr. Anderson, but reserving judgment on the admissibility of Dr. Anderson's testimony. The following day, the plaintiff submitted his supplemental Rule 213(f) interrogatories and requests to produce requesting information and documents relating to Dr. Anderson's earnings from medical-legal work. On October 11, 2019, the plaintiff served Hartsoe with a subpoena *duces tecum* regarding Dr. Anderson's financial information and scheduled Hartsoe's deposition. That same day, the plaintiff filed an emergency motion for an accelerated Rule 213(f)(3) discovery schedule requesting an order from the court directing the defendant to produce all discovery in compliance with the plaintiff's discovery requests by 5 p.m. on October 15, 2019.

¶ 78 At the hearing on the plaintiff's motion, the defendant lodged no complaint about the scope of the plaintiff's discovery or the deadline for production. Instead, the defendant advised the court that he intended to comply with discovery and agreed to the court granting the plaintiff's motion. The morning after receiving the defendant's answers, the plaintiff advised the defendant that the plaintiff believed the discovery responses were deficient and requested additional information. In response, the defendant continued to produce additional documentation in the hours leading up to Hartsoe's

deposition. It became apparent during the deposition, however, that the defendant had not fully complied with discovery. The record, therefore, supports a finding that the plaintiff was diligent in seeking the requested discovery prior to the depositions.

¶ 79   The defendant further argues that the plaintiff was not diligent in seeking the evidence because the plaintiff made no effort to obtain additional discovery from the defendant by filing a motion to compel or a request for supplemental discovery after Dr. Anderson's deposition. The defendant argues that, in light of the defendant's written objections to the plaintiff's discovery, the plaintiff should have requested a 201(k) conference or filed a motion to compel discovery after Dr. Anderson's evidence deposition so that the court could have ruled upon the defendant's objections and made a specific production order delineating which items were discoverable.

¶ 80   The defendant's position on appeal ignores the compressed timeline under which the parties were operating, a situation largely the result of the defendant's lack of diligence and the trial court's considerable efforts to balance the parties' competing interests and the equities of the case. The record is abundantly clear that the plaintiff was seeking information regarding Dr. Anderson's earnings from medical-legal work for cross-examination. After the defendant's initial disclosures, the plaintiff contacted the defendant to advise him that plaintiff's counsel believed the defendant's production was deficient. In response, the defendant disclosed additional information in the hours leading up to Hartsoe's deposition. Immediately prior to the deposition of Hartsoe, plaintiff's counsel reiterated that, while they may have "used as many descriptive terms for the documents as possible," they were limiting their inquiry to the nature and extent of Dr.

Anderson's and Illinois Southwest Orthopedics' medical-legal practice. It became clear during Hartsoe's deposition that she had not complied with the subpoena *duces tecum* by providing the plaintiff with documents evidencing all of the income Dr. Anderson earned from medical-legal work, even though this information was readily available. This became even clearer during Dr. Anderson's testimony, when Dr. Anderson acknowledged that the IME List and Deposition Analysis did not contain complete information as to his income for medical-legal work and that this information should have been provided to the plaintiff. Dr. Anderson testified that his office was working on collecting this information. This was the Thursday before trial was scheduled to begin the following Monday.

¶ 81    As already noted, while it may have been advisable for the plaintiff to have filed a motion to compel, the fact remains that there was simply no real opportunity for the use of the timelines implemented by the trial court and the defendant cannot be heard to complain on the failure of the plaintiff to file a motion, where it was the defendant's lack of diligence that caused the "last minute" pretrial efforts to collect discovery related to Dr. Anderson's medical-legal work. And, the court had already ordered the defendant to comply with the plaintiff's discovery requests and to produce the information and documents related to Dr. Anderson's income from his medical-legal work so that the plaintiff could effectively cross-examine Dr. Anderson during the evidence deposition. The defendant knew that his disclosures were deficient after Hartsoe's deposition and took no action to supplement his responses before Dr. Anderson's deposition. The defendant took no action, despite the trial court's admonishment that it would revisit the

38

issue of the admissibility of Dr. Anderson's testimony, and that it would only allow Dr. Anderson's testimony to be admitted if the defendant fully complied with discovery.

¶ 82    Finally, the defendant's suggestion that the plaintiff could have filed a motion to compel after Dr. Anderson's evidence deposition is disingenuous, as it presupposes that there was not only enough time to file this motion, but also to schedule and conduct a hearing before the trial court, after due notice to all parties. Further, this argument presupposes that the court would immediately enter an order, and that the defendant would compile the information in compliance with the court's order, giving the plaintiff sufficient time to review said documents, and for the parties to then conduct a second evidence deposition of Dr. Anderson in the single business day remaining before trial. This hurried, cascade of events would have been necessary because the defendant was not diligent in preparing his defense in the preceding year and had failed to comply with the court's discovery orders. Notably, at the hearing on the plaintiff's motion to bar Dr. Anderson's testimony, the defendant did not request that the court reschedule trial or present any alternative remedy or sanction to his discovery violation. Based on the foregoing, as to the fifth factor, we find the plaintiff was diligent in seeking the discovery required regarding Dr. Anderson. We also find that the plaintiff's objection to Dr. Anderson's testimony was timely.

¶ 83    Finally, the sixth factor, the good faith of the party offering the testimony, also weighs in favor of the plaintiff. The trial court found that Dr. Anderson did not comply with the plaintiff's discovery requests in good faith, a finding supported by the record. At the October 15, 2019, hearing, the trial court confirmed with defense counsel that Dr.

Anderson had extensive experience testifying to his medical-legal work and was aware of the disclosure requirements for information regarding his income from his medical-legal work.[3] Dr. Anderson also admitted to this knowledge during his deposition. After it became apparent during Hartsoe's deposition that Dr. Anderson's office had failed to disclose all the relevant information and produce all necessary documents, neither the defendant, nor Dr. Anderson, supplemented their responses prior to Dr. Anderson's evidence deposition. Instead, knowing that the information his office provided was incomplete, Dr. Anderson initially attempted to mislead the plaintiff into believing that his office's disclosure was complete and that the IME List he provided to the plaintiff included the income he received from performing medical record reviews. Only when confronted by plaintiff's counsel did Dr. Anderson admit that he had learned earlier that day that his disclosure was deficient.

¶ 84    Furthermore, contrary to his assertion, the defendant was not diligent in obtaining and disclosing Dr. Anderson as an expert witness. The defendant has repeatedly asserted that the late disclosure of Dr. Anderson and the production of his report was caused by circumstances beyond his control, including difficulties in obtaining the plaintiff's medical records and the plaintiff's late disclosure of medical treatment by Dr. Rutz. These attempts by the defendant to deflect the blame for his late disclosures are

---

[3]Although the Illinois Supreme Court rules do not require a retained expert witness to issue a report or maintain a list of medical-legal cases, Federal Rule of Civil Procedure 26(a)(2) requires an expert witness to provide, among other things, a written report and keep a list of "all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2) (eff. Dec. 1, 2015). As already noted, Illinois precedent requires a party to disclose information regarding medical-legal work performed by its retained expert. *Trower*, 121 Ill. 2d at 217-19; *Shaheen*, 369 Ill. App. 3d at 543-44.

unpersuasive. While some of the delay in obtaining the plaintiff's medical records was attributable to an error by one of the plaintiff's treating physicians, the record clearly demonstrates that the majority of the delay was attributable to the defendant's lack of diligence in requesting the plaintiff's medical records and in following up on those requests. We are unwilling to accept the defendant's arguments, especially where the defendant did not seek to take an evidence deposition of a records' custodian to verify the accuracy of the records. Had such a deposition been taken in a timely manner, all of the plaintiff's records, except for the visit with Dr. Rutz on August 6, 2019, would have been produced.

¶ 85    Further, the defendant's assertion that the plaintiff delayed Dr. Anderson's report by untimely supplementing his Rule 213 and 214 discovery with additional medical records is without merit. The plaintiff sought additional medical treatment with Dr. Rutz on August 6, 2019. The plaintiff sent the defendant supplemental discovery, including the medical records with Dr. Rutz's diagnosis on August 22, 2019, seven days past the discovery deadline. The parties, however, were required by Rule 213(i) to "seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party." Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2018). The committee comments to Rule 213(i) state that "seasonably supplement" varies with the facts of each case but does not allow a party to fail to comply with the spirit of the rule by either negligent or willful noncompliance. Ill. S. Ct. R. 213(i), Committee Comments (rev. June 1, 1995); *Smith v. Murphy*, 2013 IL App (1st) 121839, ¶ 21. Thus, under Rule 213(i), the plaintiff was required to supplement his discovery responses and to

disclose his medical treatment and diagnosis to the defendant. Nothing in the record suggests that the plaintiff's August 22, 2019, disclosure was not appropriate or seasonable. Instead, it was the defendant's lack of diligence that caused the untimely Rule 213(f) disclosure of his retained expert and opinions and the last-minute evidence depositions of Dr. Anderson and his custodian of records.

¶ 86    Finally, we must address the defendant's contentions that the plaintiff's discovery requests were overly broad, unduly burdensome, tailored to harass, and beyond the scope of *Trower*, 121 Ill. 2d 211. These arguments are untimely. While the defendant objected to the plaintiff's supplemental discovery requests in his answers thereto, he did not raise these issues with the trial court prior to trial, despite several opportunities to do so.[4] The defendant's first opportunity was at or before the October 15, 2019, hearing on the plaintiff's emergency motion for an accelerated Rule 213 discovery schedule. At that point, the defendant had been in possession of the plaintiff's discovery requests for five days and should have read the requests. The defense voiced no objection to the plaintiff's discovery requests at the hearing, and instead assented to the trial court's grant of the plaintiff's motion and indicated that responses were being compiled. Nor did the defendant raise his objections at the October 21, 2019, hearing addressing the plaintiff's

[4]The defendant's objections to the plaintiff's supplemental discovery were improper, general, boilerplate objections. As this court stated in *Simpkins*, 2017 IL App (5th) 160478, ¶ 39:

"The supreme court rules regarding discovery do not permit litigants to make objections, without some statement supporting them. Therefore, this habitual practice of setting out a litany of baseless, boilerplate objections is not merely an affront to the supreme court rules, but a perilous practice. Parties who offer general objections or boilerplate objections run the risk of causing unnecessary delay in the orderly process of discovery, needlessly increasing the costs of litigation, having these objections summarily denied, and preserving nothing for appeal."

motion to bar Dr. Anderson's testimony based on his failure to comply with discovery. Any contention by the defendant that Dr. Anderson's responses constituted reasonable compliance because the plaintiff's discovery requests were inappropriate or abusive should have been raised when the trial court was considering the propriety of Dr. Anderson's responses and the appropriate sanction.

¶ 87    Instead, the defendant raised these issues with the trial court for the first time in his posttrial motion for a new trial. At that time, the court rejected the defendant's arguments, finding the plaintiff's discovery requests were reasonable, and that Dr. Anderson failed to provide the plaintiff with "even the minimum that [he was] requesting." We agree with the trial court's assessment. Here, the plaintiff's discovery was seeking information and documents related to Dr. Anderson's income from performing medical-legal work so that the plaintiff could cross-examine Dr. Anderson as to his potential financial bias. The record demonstrates that the defendant failed to substantially comply with the plaintiff's supplemental 213(f) discovery requests for this information and, upon learning of the deficiency in his production, did not seek to remedy it. Furthermore, the defendant's failure to even ask Hartsoe and Dr. Anderson for the documents requested by the plaintiff's discovery is evidence of the bad-faith effort made by defense counsel. For the reasons stated above, we cannot say that the defendant acted in good faith to comply with the discovery requests and the orders of the court.

¶ 88    Based on all of the foregoing, we find that the trial court did not abuse its discretion in granting the plaintiff's emergency motion barring the introduction of Dr. Anderson's testimony at trial. The trial court gave the defendant every opportunity to

cure his discovery violations but, ultimately, the defendant failed to offer the discovery properly requested of Dr. Anderson.

¶ 89    It is important to remember that the rules are intended to establish guidelines for a fair and orderly procedure for discovery. This case illustrates the pitfalls of the failure to abide by the rules. Here, the parties placed the trial court between the proverbial rock and a hard place, a situation which was easily avoidable. Defense counsel's repeated failures to abide by the deadlines established in the case management order created a situation that resulted in an unrealistic, artificially compressed discovery schedule. The record suggests that defense counsel frequently waited until on or near the date of a deadline to begin seriously addressing an issue. As the appellate court stated in *Clymore v. Hayden*, 278 Ill. App. 3d 862, 869 (1996), this conduct is unacceptable:

> "[C]ourt rules and orders are not merely suggestions to be complied with if convenient. Instead, they constitute obligations that counsel disregard at their *personal* peril and that trial courts must enforce. This record reveals a shocking mindset of *** counsel that deadlines—whether imposed by court order or supreme court rule—are of no importance and missing them is of no consequence. Counsel has acted as if judicial deadlines marked the time he had to *begin* to think about his compliance. We hope that our decision here, affirming the trial court's [sanction], will emphasize the fact that there are indeed consequences to ignoring court orders and rules." (Emphases in original.)

¶ 90    We would be remiss not to observe, once again, that plaintiff's counsel could have also been more proactive, and that their trial strategy exacerbated the issue. There is no doubt that the defendant's Rule 213 witness disclosures were insufficient, and that the defendant repeatedly missed established deadlines. Plaintiff's counsel appears to have sat back and waited, while defense counsel floundered, never doing more than was strictly required, ignoring the mandate of Rule 201(k). By July 15, 2019, plaintiff's counsel

knew, through the defendant's insufficient Rule 213 disclosure, that the defendant was likely intending to retain a controlled expert witness to perform a medical record review. On August 15, 2019, plaintiff's counsel knew that the defendant was seeking an extension of the case management order deadline so that he could take the evidence deposition of his retained expert. Plaintiff's counsel responded to this pleading more than a month later, on September 20, 2019, at which time counsel requested, for the first time, that Dr. Anderson be barred based on the defendant's failure to abide by the case management order. Although untimely, plaintiff's counsel also received the report with Dr. Anderson's opinions on September 20, 2019, yet, plaintiff's counsel did not seek a Rule 201(k) conference to resolve the parties' differences over discovery. In sum, the trial court's order granting the defendant's motion for an extension of time and permitting the evidence deposition of Dr. Anderson to proceed was the court's attempt to balance the equities, but eventually determined that the defendant's lack of diligence justified the barring of the defendant's expert witness.

¶ 91                                    Jury Award

¶ 92    Next, the defendant argues that the trial court erred in denying his motion for a new trial because the jury's verdict was against the manifest weight of the evidence. The defendant contends the jury's award of $129,510.60 was against the manifest weight of the evidence because the plaintiff sustained only $8363.94 in medical bills. The defendant also relied upon the testimony of Dr. Rutz, who indicated that the plaintiff's symptoms were not currently severe enough to warrant surgical intervention, and it was difficult to predict if the plaintiff would need surgery in the future.

¶ 93   It is within the province of the jury to assess the weight and credibility of the witnesses and to resolve conflicts in the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). On a motion for new trial, the trial court weighs the evidence and will set aside the jury's verdict and order a new trial only if the verdict is contrary to the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 454. A jury's verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence presented. *Maple*, 151 Ill. 2d at 454. The trial court's ruling on a motion for new trial will be reversed only upon a finding that the court clearly abused its discretion. *Maple*, 151 Ill. 2d at 455. "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Maple*, 151 Ill. 2d at 455.

¶ 94   In this case, the jury awarded the plaintiff $8989 for past medical expenses; $521.60 in lost earnings; and $30,000 each for past pain and suffering, future pain and suffering, loss of normal life experienced, and loss of normal life to be experienced in the future, for a total award of $129,510.60. The jury did not award the plaintiff any damages for future medical expenses or for future lost earnings. On appeal, the defendant does not contest any specific category of damages, and instead only asserts that the total award of damages is against the manifest weight of the evidence.

¶ 95   The plaintiff presented substantial evidence of the injuries he sustained as a result of the motor vehicle accident. The plaintiff testified his body was twisted and pushed up and forward after his vehicle was struck by the defendant's vehicle. The plaintiff began to

46

experience pain in his neck and low back shortly after the accident. The plaintiff sought treatment for his injuries, and his medical records and bills were admitted into evidence. The plaintiff testified about the persistent pain he had experienced in the 20 months since the accident, despite numerous treatments. He also described the limitations that these injuries had placed on his life and work. The plaintiff also presented the testimony of Dr. Rutz, who diagnosed the plaintiff with a small annular tear and a disc protrusion. Dr. Rutz testified that the plaintiff's condition was likely to continue in the future and could potentially impact the plaintiff's ability to enjoy life and to function daily. Dr. Rutz testified that he advised the plaintiff to "live with" his symptoms for as long as he could, and he did not recommend surgery, so long as the plaintiff was able to function reasonably well. Based on this evidence, it cannot be said that the jury's award in this case was against the manifest weight of the evidence. Here, in rendering its verdict, the jury did not award the plaintiff the full amount of damages he requested, suggesting the jury considered all the evidence and the parties' respective positions as to the appropriate amount of damages. The defendant has offered no compelling facts or arguments supporting a finding that the jury's award was against the manifest weight of the evidence. The trial court did not abuse its discretion in denying the defendant's posttrial motion for a new trial.

¶ 96                                    CONCLUSION

¶ 97    Based on the foregoing, the judgment of the circuit court of St. Clair County is affirmed.

47

¶ 98    Affirmed.